No. 24-60231

IN THE

# United States Court of Appeals
## for the Fifth Circuit

————————

AIRLINES FOR AMERICA, NATIONAL AIR CARRIER ASSOCIATION,
INTERNATIONAL AIR TRANSPORT ASSOCIATION,
ALASKA AIRLINES, INC., AMERICAN AIRLINES, INC.,
DELTA AIR LINES, INC., HAWAIIAN AIRLINES, INC.,
JETBLUE AIRWAYS CORP., UNITED AIRLINES, INC.,

*Petitioners,*

v.

DEPARTMENT OF TRANSPORTATION,

*Respondent,*

————————

On Petition for Review of a Final Rule of the
Department of Transportation

————————

**BRIEF FOR AMICUS CURIAE THE CHAMBER OF
COMMERCE OF THE UNITED STATES OF AMERICA
IN SUPPORT OF PETITIONERS' STAY MOTION**

————————

Jordan L. Von Bokern
Mariel A. Brookins
U.S. CHAMBER
  LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062

Tobias S. Loss-Eaton
  *Counsel of Record*
Peter A. Bruland
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
tlosseaton@sidley.com

June 17, 2024

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## A.   Petitioners

> Airlines for America
> National Air Carrier Association
> International Air Transport Association
> Alaska Airlines, Inc.
> American Airlines, Inc.
> Delta Air Lines, Inc.
> Hawaiian Airlines, Inc.
> JetBlue Airways Corp.
> United Airlines, Inc.

## B.   Attorneys for Petitioners

> Shay Dvoretzky
> Alisha Q. Nanda
> Parker Rider-Longmaid
> Kyser Blakely
> Nicole Welindt
> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
>
> Paul W. Hughes
> Andrew A. Lyons-Berg
> Nicole E. Wittstein
> MCDERMOTT WILL & EMERY LLP

**C.     Respondent**

United States Department of Transportation

**D.     Attorneys for Respondent**

Nicholas S. Crown
Michael Raab
Subash S. Iyer

**E.     Amicus Curiae**

The Chamber of Commerce of the United States of America

**F.     Attorneys for Amicus Curiae**

Tobias S. Loss-Eaton
Peter A. Bruland
SIDLEY AUSTIN LLP

Jordan L. Von Bokern
Mariel A. Brookins
U.S. CHAMBER LITIGATION CENTER

**G.     Federal Rule of Appellate Procedure 26.1**

The Chamber of Commerce of the United States of America is a
nonprofit, tax-exempt organization incorporated in the District of Colum-
bia. It has no parent corporation, and no publicly held company has 10%
or greater ownership in the Chamber.

June 17, 2024                           */s/ Tobias S. Loss-Eaton*
                                        Tobias S. Loss-Eaton

                                        *Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Certificate of interested persons ..................................................i

Table of authorities .................................................................iv

Amicus's identity, interest, and authority to file ...................................1

Summary of argument ............................................................2

Argument ...........................................................................2

I.    The fee rule exceeds the Department's authority. ...........................2

    A.    Section 41712 does not authorize legislative
           rulemaking. ............................................................3

    B.    At a minimum, Congress did not authorize the
           Department to issue prescriptive rules. ...............................11

II.   Only Congress can enact the Department's preferred policy........12

Conclusion .........................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States,*
  295 U.S. 495 (1935).................................................................5

*Alaska v. Dep't of Transp.,*
  868 F.2d 441 (D.C. Cir. 1989) .............................................9

*Am. Airlines, Inc. v. N. Am. Airlines, Inc.,*
  351 U.S. 79 (1956)...................................................................6

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988)...............................................................11

*Chamber of Com. v. Dep't of Labor,*
  885 F.3d 360 (5th Cir. 2018)................................................8

*DISH Network Corp. v. NLRB,*
  953 F.3d 370 (5th Cir. 2020).................................................3

*EEOC v. Arabian Am. Oil Co.,*
  499 U.S. 244 (1991).................................................................8

*Gozlon-Peretz v. United States,*
  498 U.S. 395 (1991).............................................................10

*Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Servs.,*
  968 F.3d 454 (5th Cir. 2020).............................................10

*Intel Corp. Inv. Pol'y Comm. v. Sulyma,*
  140 S. Ct. 768 (2020)...........................................................12

*Matal v. Tam,*
  582 U. S. 218 (2017)............................................................10

*Nat'l Mining Ass'n v. Dep't of Labor,*
  292 F.3d 849 (D.C. Cir. 2002) ............................................4

*Polselli v. IRS*,
    598 U.S. 432 (2023)................................................................5

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019).......................................................6, 7

*United Air Lines, Inc. v. Civil Aeronautics Bd.*,
    766 F.2d 1107 (7th Cir. 1985).........................................9, 10

*Watt v. Alaska*,
    451 U.S. 259 (1981)............................................................8

*Wisc. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018)..........................................................12

**Statutes and Rules**

15 U.S.C. § 57a ......................................................................7

49 U.S.C. § 40113(a) ...........................................................10

        § 41504(a) ................................................................4

        § 41712 .................................................. 1, 2, 3, 11

        § 42302 ....................................................................6

Civil Aeronautics Act of 1938,
    Pub. L. No. 75-706, § 601, 52 Stat. 973 ...............................5

Civil Aeronautics Board Sunset Act of 1984,
    Pub. L. No. 98-443, § 7, 98 Stat. 1703 ..................................7

FAA Reauthorization Act of 2018,
    Pub. L. No. 115-254, § 423, 132 Stat. 3186 .........................6

Final Rule, *Enhancing Transparency of Airline Ancillary
    Service Fees*, 89 Fed. Reg. 34,620 (Apr. 30, 2024)...................2, 11, 12

Final Rule, *Priority Rules, Denied Boarding Compensation
    Tariffs and Reports of Unaccommodated Passengers*,
    32 Fed. Reg. 11,921 (Aug. 18, 1967) .....................................8

Proposed Rule, *Priority Rules, Denied-Boarding Compensation Tariffs and Reports of Unaccommodated Passengers*, 41 Fed. Reg. 16,478 (Apr. 19, 1976)..................................9

## Other Authorities

Airlines for America,
*Air Travelers in America* (2024) ........................................................ 13

Airline Passengers' Bill of Rights,
S. 3222, 117th Cong. (2021)............................................................... 13

Antonin Scalia & Bryan A. Garner,
*Reading Law: The Interpretation of Legal Texts* (2012) .................... 10

FAIR Fees Act of 2021,
H.R. 6215, 117th Cong. (2021)............................................................ 13

Thomas W. Merrill, *Antitrust Rulemaking: The FTC's Delegation Deficit*, 75 Admin. L. Rev. 277 (2023) ........................... 6, 7

## AMICUS'S IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. The Chamber represents the interests of its members before the courts, Congress, and the Executive Branch. To that end, the Chamber regularly files amicus briefs in cases that raise issues of concern to the nation's business community.

The Chamber has a substantial interest in this case because many of its members would face significant compliance costs under the Department of Transportation's ancillary-fee rule. Given that burden, the rule should be stayed while this case is pending. The Chamber writes to highlight a threshold problem: 49 U.S.C. § 41712(a)—the statutory basis for the rule—does not permit the Department to issue legislative rules.

All parties consented to the filing of this brief. No counsel for any party authored this brief in whole or in part, and no person or entity besides amicus and its counsel funded the brief's preparation or submission.

## SUMMARY OF ARGUMENT

Congress authorized the Department of Transportation to "stop" "unfair and deceptive" practices in air transportation. 49 U.S.C. § 41712. But rather than delegating the power to issue legislative rules, Congress required the agency to proceed through case-by-case adjudication. The Department's new rule flouts those limits twice over. Instead of engaging in individualized decisionmaking, the agency issued a generalized decree. And instead of *proscribing* specific unfair or deceptive practices by particular actors, the rule *prescribes* when, where, and how all regulated parties must convey information to consumers.

Given these limits on the agency's power, only Congress can enact the scheme the rule contemplates. It has not done so. And with good reason: Fee information is more accessible than ever, and consumers report satisfaction with air travel. The rule is a "solution" in search of a problem.

## ARGUMENT

## I.    The fee rule exceeds the Department's authority.

The Department adopted the rule "pursuant to its statutory authority in 49 U.S.C. § 41712." Final Rule, *Enhancing Transparency of Airline Ancillary Service Fees*, 89 Fed. Reg. 34,620, 34,627 (Apr. 30, 2024). But

section 41712 doesn't grant authority to make rules—let alone to micromanage regulated parties' communications with consumers.

### A.    Section 41712 does not authorize legislative rulemaking.

Text, context, and history show the Department must address unfair and deceptive practices through adjudication, not rulemaking. While the Department has more recently claimed otherwise, those belated claims warrant no deference.

***Statutory text.*** Section 41712 authorizes the Department to "investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in" unfair or deceptive practices. If so, it "shall order the [entity] to stop the practice." 49 U.S.C. § 41712(a). Two aspects of this language show that it authorizes only adjudication.

*First*, Congress's chosen verbs suggest it wanted the agency to proceed through adjudication, not rulemaking. Before enforcing section 41712, the Department must "find[] that" a regulated party engaged in improper practices. *Id.* Such "find[ings]" are part of adjudication, not rulemaking. *E.g.*, *DISH Network Corp. v. NLRB*, 953 F.3d 370, 373 n.1, 381 n.6 (5th Cir. 2020) ("NLRB found" violations during its "adjudication"). And if the agency so finds, it must "order" the party to stop—

3

another action that "typically follow[s] adjudication[]." *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 856 (D.C. Cir. 2002).

*Second*, in describing what the Department may "investigate" and act on, Congress chose determiners that call for individualized decisionmaking. Section 41712 allows the Department to investigate "*an* air carrier, foreign air carrier, or ticket agent" and then order "*the* air carrier, foreign air carrier, or ticket agent" to stop a specified practice. The choice of singular language shows that Congress meant the Department to proceed against specific targets, not to make rules for everyone. *Cf.* 49 U.S.C. § 41504(a) (contemplating a Department "regulation" prescribing the manner in which "*every* air carrier and foreign air carrier" shall publish tariffs showing prices for foreign air transportation (emphasis added)).

***Statutory context.*** Section 41712's language also contrasts with that of other provisions that confer rulemaking power. In fact, the same Congress that enacted section 41712 expressly granted rulemaking authority to implement other provisions of the same statute. The current section 41712 first appeared as section 411 of the Civil Aeronautics Act of 1938. Like today's version, it said nothing about rulemaking. By contrast, section 601 of same Act—which appeared just four pages later in

the Statutes at Large—expressly authorized the agency to "prescrib[e]" seven categories of "Regulations" with the force of law, and set forth three principles it "shall" consider in doing so. *See* Pub. L. No. 75-706, § 601(a)–(b), 52 Stat. 973, 1007–08.

Section 41712 says nothing about prescriptions, regulations, or the principles that would govern them. Reading it to confer the same power as section 601 thus violates the presumption "that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another section of the same Act." *Polselli v. IRS*, 598 U.S. 432, 439 (2023) (cleaned up).

And Congress first enacted these provisions just three years after *A.L.A. Schechter Poultry Corp. v. United States*, which held unconstitutional a statute allowing the executive to issue "codes of fair competition" with "no [guiding] standards." *See* 295 U.S. 495, 521–22, 541–42 (1935). Indeed, *Schechter Poultry* specifically contrasted that unprecedented regime with the FTC Act's bar on "unfair methods of competition," which must "be determined in particular instances, upon evidence, in the light of particular competitive conditions." *Id.* at 532–33. Against this backdrop, the contrast between sections 601 and 411 (now 41712) is especially

stark; the former expressly allows rulemaking and provides intelligible principles to guide it, while the latter contemplates the kind of case-by-case adjudication required to flesh out a standard like "unfair or deceptive." *Schechter Poultry* both illuminates Congress's meaning and counsels against reading section 41712 to give the Department the kind of vast prescriptive power it now claims.

Nor is section 601 the only evidence that Congress knows how to grant rulemaking power. In the FAA Reauthorization Act of 2018, for example, Congress ordered the Department to "promulgate regulations to implement" 49 U.S.C. § 42302's consumer-complaint provisions. Pub. L. No. 115-254, § 423, 132 Stat. 3186, 3337.

***Statutory history***. Three aspects of statutory history bolster this conclusion. *First*, section 41712 was "modeled closely after" the FTC Act's "unfair or deceptive acts or practices" provision, section 5. *See Am. Airlines, Inc. v. N. Am. Airlines, Inc.*, 351 U.S. 79, 82 (1956). As originally enacted (and as discussed in *Schechter Poultry*), section 5 "clearly contemplated adjudication, not rulemaking." Thomas W. Merrill, *Antitrust Rulemaking: The FTC's Delegation Deficit*, 75 Admin. L. Rev. 277, 298 (2023). Section 41712 brought that "old soil" with it, *Taggart v. Lorenzen*,

6

139 S. Ct. 1795, 1801 (2019), granting "only the power to conduct adjudications," Merrill, *supra*, 301.

And while Congress later gave the FTC explicit rulemaking power in this area, it never did the same for the Department. The Magnuson-Moss Act of 1974 expressly authorized the FTC to issue legislative rules concerning "unfair or deceptive acts or practices." *See* 15 U.S.C. § 57a(a)–(b). But section 41712 looks nothing like the Magnuson-Moss Act.

*Second*, Congress later modified then-section 411 (now section 41712) to expressly contemplate agency regulations—but only as to one narrow issue. In 1984, Congress amended this provision to let carriers "incorporate by reference in any ticket … any of the terms of the contract of carriage … to the extent such incorporation by reference is in accordance with regulations issued by the" agency. Civil Aeronautics Board Sunset Act of 1984, Pub. L. No. 98-443, § 7, 98 Stat. 1703, 1706 (now codified at 49 U.S.C. § 41707). This amendment would have been superfluous if the agency already enjoyed general rulemaking authority. And again, this narrow modification bears no resemblance to the Magnuson-Moss Act's provisions governing the FTC.

7

*Third*, the Department's assertion of rulemaking power under section 41712 is a relatively recent development. This matters because an agency's "contemporaneous construction" of a statute "carries persuasive weight," while later assertions that "conflict with its initial position" merit "considerably less deference." *Watt v. Alaska*, 451 U.S. 259, 272–73 (1981). Here, the Department's claim to rulemaking authority was "neither contemporaneous with [the statute's] enactment nor consistent … since [section 41712] came into law." *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991).

Although the Department's predecessor often invoked section 41712 in enforcement proceedings, it did not purport to issue rules under that provision until 1967—almost thirty years after Congress enacted the statute. *See* Final Rule, *Priority Rules, Denied Boarding Compensation Tariffs and Reports of Unaccommodated Passengers*, 32 Fed. Reg. 11,921, 11,939 (Aug. 18, 1967). That alone is "reason to withhold approval or at least deference." *Chamber of Com. v. Dep't of Labor*, 885 F.3d 360, 381 (5th Cir. 2018); *Arabian Am.*, 499 U.S. at 257–58 (interpretation offered 24 years after the statute's enactment deserved "limited" weight).

Nor has the Department consistently invoked the power it now claims. Some early evidence suggests the agency understood itself to be issuing interpretive rules—not legislative ones. In 1976, for example, it sought comment on whether it "should issue a *policy statement* defining" a certain practice as "unfair or deceptive" under section 41712. Proposed Rule*, Priority Rules, Denied-Boarding Compensation Tariffs and Reports of Unaccommodated Passengers*, 41 Fed. Reg. 16,478, 16,479 (Apr. 19, 1976) (emphasis added). And in 1989, it told the D.C. Circuit that regulations purporting to ban unfair and deceptive advertisements were actually "non-legislative, interpretive rules." *Alaska v. Dep't of Transp.*, 868 F.2d 441, 446 (D.C. Cir. 1989).

This history also refutes the Seventh Circuit's view that it is "too late to inquire whether, as an original matter of interpretation," the Department may use rulemaking to "prevent unfair or deceptive practices." *United Air Lines, Inc. v. Civil Aeronautics Bd.*, 766 F.2d 1107, 1112 (7th Cir. 1985). Although that court upheld the agency's rulemaking power, it failed to consider the provenance or consistency of the Department's assertions—let alone the textual and contextual evidence laid out above. So even if Judge Posner was right that "a page of history is worth a volume of textual explication," *id.* at

1111; *but see Matal v. Tam*, 582 U. S. 218, 232–33 (2017), his analysis skipped several chapters.

***The agency's general-authority argument fails.*** In denying Petitioners' stay motion—though not in the rule itself—the agency pointed to a separate provision outlining its "General Authority." That provision authorizes the Department to "take action" that it "considers necessary" to implement Part A of Title 49 (which includes section 41712), "including … prescribing regulations." 49 U.S.C. § 40113(a). But "[t]he grant of authority to promulgate 'necessary' regulations cannot expand the scope of the provisions the agency is tasked with 'carrying out.'" *Gulf Fishermens Ass'n v. Nat'l Marine Fisheries Servs.*, 968 F.3d 454, 465 (5th Cir. 2020) (citation omitted). Here, section 41712's specific delegation to combat unfair and deceptive practices through adjudication "controls over one of more general application." *Gozlon-Peretz v. United States*, 498 U.S. 395, 406–07 (1991).

*    *    *

In sum, Congress in section 41712 authorized only adjudication. That necessarily means it did not authorize rulemaking. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal*

*Texts* 107 (2012) ("The expression of one thing implies the exclusion of others."). And because "an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress," *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988), the Department cannot exercise a power under section 41712 that the statute's language does not confer.

## B.    At a minimum, Congress did not authorize the Department to issue prescriptive rules.

Even if the Department could implement section 41712 through rulemaking, two limits would still apply.

*First*, the agency may only "stop" practices that it determines are "unfair or deceptive." 49 U.S.C. § 41712(a). But the rule goes far beyond "stop[ping]" such practices; it prescriptively creates a reticulated scheme governing when, where, and how information must be shared. Take the requirement to display cancellation policies "on the last page of the booking process." 89 Fed. Reg. at 34,674. In support of that mandate, the Department found that "failure to make the required disclosure *before ticket purchase* is an unfair and deceptive practice," *id.* at 34,663 (emphasis added), and that cancellation policies are "most relevant to consumers" when made "on the last page," *id.* at 34,630 n.67. But it never reached

11

the antecedent conclusion that disclosing cancellation policies earlier in the process would be "unfair or deceptive." Likewise, although "pop-ups" are "permitted," *id.* at 34,621, "fees cannot be displayed through a hyperlink," *id.* at 34,675. Yet the Department never found that using hyperlinks is "unfair or deceptive." Both policies thus exceed the agency's authority to "stop" unfair or deceptive practices.

*Second*, the Department's prohibitory authority is triggered only when the agency "finds" that an actor "*is* engaged" in such a practice. 49 U.S.C. § 41712(a) (emphasis added). But the rule nowhere purports to find that any specific air carrier or ticket agent currently "is engaged" in unfair or deceptive practices—let alone that they all are. That, too, makes the rule unlawful.

## II. Only Congress can enact the Department's preferred policy.

"Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences." *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). So "[i]f policy considerations suggest that the current scheme should be altered, Congress must be the one

to do it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020).

As it happens, Congress has considered legislation authorizing the Department to do exactly what it seeks to do here—and declined to enact it. Three years ago, senators introduced a bill that would have required the Department to "prescribe regulations" requiring airlines to disclose "any ancillary fees … at any point at which the fare is shown." Airline Passengers' Bill of Rights, S. 3222, 117th Cong. § 203(3) (2021). Similar legislation was introduced in the House. *See* FAIR Fees Act of 2021, H.R. 6215, 117th Cong. § 2 (2021). Neither bill made it out of committee.

That's not surprising. Air travel is easier and more accessible now than ever before, and consumers can already find all the information they need to make informed choices. Research bears this out. In a recent survey, flyers gave the ticket-shopping experience nearly four out of five stars, and 89% of passengers reported either satisfaction or neutral feelings toward their overall air-travel experience. *See* Airlines for America, *Air Travelers in America* at 23–24 (2024), bit.ly/A4A_survey.

Those numbers reflect vigorous competition for a non-captive clientele, with airlines and ticket agents responding to consumers' preferences

13

and striving to earn their loyalty. As Congress likely grasped, intervening in that market would saddle businesses with significant compliance costs and foist unwanted complications on consumers—leaving everyone worse off. This Court should halt the Department's attempt to enact policies that Congress refused to adopt and recognize the agency's effort for what it is: a "solution" in search of a problem.

## CONCLUSION

The Court should grant Petitioners' stay motion.


Respectfully submitted,

Jordan L. Von Bokern

*/s/ Tobias S. Loss-Eaton*

Mariel A. Brookins

Tobias S. Loss-Eaton

U.S. CHAMBER

　*Counsel of Record*

　LITIGATION CENTER

Peter A. Bruland

1615 H Street, NW

SIDLEY AUSTIN LLP

Washington, DC 20062

1501 K Street, NW

Washington, DC 20005

(202) 736-8000

tlosseaton@sidley.com


June 17, 2024


*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2024, a copy of this brief was electronically filed with the Clerk of the Court using the CM/ECF system. Notice will be sent to all CM/ECF-registered counsel.


*/s/ Tobias S. Loss-Eaton*
Tobias S. Loss-Eaton

# CERTIFICATE OF COMPLIANCE

This brief complies with Rule 27(d)(2) of the Federal Rules of Appellate Procedure and Fifth Circuit Rule 27.4 because it contains 2,575 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 27(d)(2). The brief complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

June 17, 2024                                  */s/ Tobias S. Loss-Eaton*
                                               Tobias S. Loss-Eaton