No. 24-60231

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Airlines for America; Alaska Airlines, Incorporated; American Airlines, Incorporated; Delta Air Lines, Incorporated; Hawaiian Airlines, Incorporated; JetBlue Airways Corporation; United Airlines, Incorporated; National Airline Carrier Association; International Air Transport Association,

Petitioners,

v.

Department of Transportation,

Respondent.

On Petition for Review from the Department of Transportation, 89 Fed. Reg. 34,620

## RESPONDENT'S OPPOSITION
## TO MOTION FOR A STAY PENDING APPEAL

*Of Counsel:*

SUBASH IYER
*Acting General Counsel*

PAUL M. GEIER
*Acting Assistant General Counsel for Litigation and Enforcement*

BLANE A. WORKIE
*Assistant General Counsel for the Office of Aviation Consumer Protection*

PAULA LEE
*Senior Trial Attorney*

EMILY KVESELIS
*Trial Attorney*

*U.S. Department of Transportation*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
NICHOLAS S. CROWN
*Attorneys, Appellate Staff Civil Division, Room 7325 U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, DC 20530 (202) 616-5365*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required, as respondent is a governmental party. 5th Cir. R. 28.2.1.

## STATEMENT REGARDING ORAL ARGUMENT

The government respectfully submits that oral argument is not necessary because petitioners have not stated grounds for the extraordinary interim relief that they seek. The final rule under review is a straightforward exercise of the Department of Transportation's plain statutory authority, it is thoroughly and reasonably explained, and it issued after an extended comment period. The government, however, stands ready to present oral argument should the Court find it helpful.

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT ........................................ii

INTRODUCTION .............................................................................. 1

STATEMENT ....................................................................................3

ARGUMENT ....................................................................................6

I.  Petitioners Are Unlikely to Succeed on the Merits. ...........................6

   A.  The Rule is fully consistent with the Department's statutory authority. .................................................................... 6

   B.  The Rule satisfies the APA's procedural requirements. ........... 12

      1.  The Rule is reasonable and amply supported. ................ 12

      2.  Petitioners' challenge to the agency's regulatory impact analysis is unfounded. ........................................ 22

II.  The Remaining Factors Tilt Sharply Against Granting a Stay. ..........24

CONCLUSION .............................................................................. 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

**INTRODUCTION**

For decades, the Department of Transportation has prescribed regulations protecting consumers from unfair and deceptive practices in the airline industry. Under its statutory authority to address such practices, the Department has required airlines to disclose the entire price of airfare, to provide appropriate compensation to affected customers on overbooked flights, and to create and publish contingency plans ensuring that passengers do not suffer hours-long tarmac delays without access to food, water, lavatories, and medicine.

This case concerns a final rule protecting consumers from surprise costs known as "ancillary fees," which cause customers to overpay by half a billion dollars annually. 89 Fed. Reg. 34,620 (Apr. 30, 2024). The Rule does not restrict the amount or nature of fees. Rather, it requires their upfront disclosure: Airlines must disclose baggage, change, and cancellation fees accurately—and do so the first time the carrier quotes a fare in response to a customer's online itinerary search. The Rule also requires carriers to reveal their size-and-weight limits for carry-on, first-checked, and second-checked baggage before ticket purchase, and, if the airline sells advance-seat assignments, to disclose that the additional purchase is unnecessary to confirm a seat on the flight. Additionally, when a consumer inputs account information

specific to the passenger, like frequent-flyer or military status, then the carrier must disclose the fees applicable to that individual. The Rule explains that carriers and ticket agents commit an unfair or deceptive practice when they fail to provide fee information upfront, and estimates the new disclosures will provide net benefits worth $30.3 million to $253.5 million annually.

The Department promulgated the Rule following years of consumer complaints and analysis, an extended comment period, and a public hearing. The Rule also provides a long compliance deadline. Airlines need not provide relevant data to third-party ticket agents until October 30, 2024, nor launch any public-facing changes until April 30, 2025.

Moreover, after the Department had promulgated the Rule, Congress enacted the FAA Reauthorization Act of 2024: The Act addresses certain offline ticket disclosures covered by the Rule, without questioning any other aspect of it or the Department's regulatory authority.

Nevertheless, petitioners—airline associations and some (not all) of their members—seek a stay. We do not oppose expedited review; a stay, however, is unjustified. On the merits, the Rule is rooted in well-established and judicially recognized statutory authority and comports with the APA. On the remaining stay factors, petitioners allege conclusory injury, disregard harms

that their veiled fees cause, and overlook the Rule's significant benefits to the public. The Court should deny a stay.

## STATEMENT

1.     Congress charged the Department of Transportation with protecting consumers from any "unfair or deceptive practice ... in air transportation or the sale of air transportation." 49 U.S.C. § 41712(a). Congress also vested the Secretary of Transportation with broad authority to "prescrib[e] regulations, standards, and procedures" in keeping with that statutory mandate. *Id.* § 40113(a). In "carrying out" those authorities, the Secretary "shall consider" it "in the public interest" to "prevent[] unfair, deceptive, predatory, or anticompetitive practices in air transportation." *Id.* § 40101(a)(9); *see id.* § 40101(a)(4), (12). For decades, the Department has prescribed generally applicable regulations to prevent unfair and deceptive practices. *See, e.g.*, *Spirit Airlines, Inc. v. DOT*, 687 F.3d 403, 410 (D.C. Cir. 2012).

2.     This litigation concerns a final rule issued in April 2024 to enhance protections for airfare consumers.

The Department concluded that airlines' failure to disclose certain baggage, change, and cancellation fees upfront, clearly, and accurately is unfair and deceptive. 89 Fed. Reg. 34,624–34,632. The Rule requires airlines to disclose fees for carry-on, first-checked, and second-checked bags, and the

3

fees to change or cancel a ticket, when the airline first provides fare and schedule information in response to an online itinerary search. *Id.* 34,627–34,629. Additionally, the Rule requires carriers to disclose their corresponding bag dimensions and change-or-cancellation policies before ticket purchase, *id.*, and to disclose that a consumer need not pay an advanced-seat-selection fee to guarantee a seat on the plane, *id.* 34,645. When a consumer provides "account information specific to the passenger," like their frequent-flyer or military status, the carrier must disclose the fees applicable to that individual. *Id.* 34,621.[1]

The Rule reflects an incremental approach to addressing hidden fees. Forty years ago, the Department required carriers to state the "entire price to be paid" by the customer. 49 Fed. Reg. 49,438, 49,440 (Dec. 20, 1984). In 2011, the Department promulgated a regulation—unchallenged here—requiring airlines to disclose specific baggage fees and other ancillary fee information as a range on their websites, to disclose (on the first screen of an airfare quote) that additional fees may apply, and to state where those prices can be found. 76 Fed. Reg. 23,110 (Apr. 25, 2011). Since then, the Department continued to receive complaints and reports—from commenters, consumers,

---

[1] The Rule also addresses practices by third-party ticket agents and establishes similar requirements. *See, e.g.*, 89 Fed. Reg. 34,621. No agent has challenged those provisions here.

consumer advocacy groups, States' attorneys general, and the Government Accountability Office (GAO)—that airlines were obfuscating the true price of airfare. 89 Fed. Reg. 34,622–34,624; 87 Fed. Reg. 63,718, 63,719 (Oct. 20, 2022) (notice of proposed rulemaking). For example, many airlines still list baggage fees in complex charts and provide wide ranges for their change-or-cancellation fees, frustrating customer efforts to determine the fee(s) that would apply. 89 Fed. Reg. 34,627–34,629. The Department estimates that surprised consumers overpay $543 million in ancillary fees annually. *Id*. 34,622.

The Department promulgated the Rule after years of study, an extended comment period, and a public hearing in which petitioners participated. 89 Fed. Reg. 34,625–34,627. Even considering petitioners' claimed costs and various economic variables, the Department estimates that the Rule will yield net annual benefits worth $30.3 million to $253.5 million. *Id*. 34,668–34,669.

The Rule takes effect July 1, 2024, but staggers its compliance deadlines. Airlines must provide relevant fee data to third-party ticket agents by October 30, 2024; they need not comply with the Rule's remaining requirements until April 30, 2025. 89 Fed. Reg. 34,667.

**3.**    Petitioners sought judicial review, 49 U.S.C. § 46110, and requested a stay from the Department, SA2, which was denied, SA10. Petitioners now seek a stay here.

## ARGUMENT

The Court should deny petitioners' motion. "'A stay is not a matter of right'" but "'an exercise of judicial discretion.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009). The movant "bears the burden of showing that the circumstances justify an exercise of that discretion" under four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at 433–34. The "first two factors" are "most critical," *id.* at 434, yet all weigh strongly against petitioners.

## I.    Petitioners Are Unlikely to Succeed on the Merits.

### A.    The Rule is fully consistent with the Department's statutory authority.

The Rule is a straightforward exercise of the Department's authority to regulate unfair and deceptive practices, supported by statutory text, decades of history, and longstanding judicial precedent.

6

1.    The Department has authority to prescribe regulations to prohibit any "unfair or deceptive practice or ... unfair method of competition in air transportation or the sale of air transportation." 49 U.S.C. § 41712(a). First included in the Civil Aeronautics Act of 1938, this authority has remained virtually unaltered ever since, despite significant changes to other aspects of federal regulation of air transportation. *See* Pub. L. No. 75-706, tit. IV, § 411, 52 Stat. 973, 1003 (1938) (precursor to § 41712); *Sabre, Inc. v. DOT*, 429 F.3d 1113, 1124 n.3 (D.C. Cir. 2005) (describing history). Congress also vested the Secretary with broad authority to "prescrib[e] regulations, standards, and procedures" that he "considers necessary to carry out" his statutory mandates. 49 U.S.C. § 40113(a). And Congress established civil penalties for a "violation of section 41712 (*including a regulation prescribed* ... *under such section*)." *Id.* § 46301(a)(5)(D) (emphasis added); *see id.* §§ 46106, 46107(b)(1)(A).

History underscores the Department's authority to promulgate the Rule. Under § 41712, the Department has consistently promulgated regulations targeting unfair and deceptive airline practices. For instance, carriers must disclose the entire price of airfare, *e.g.*, 49 Fed. Reg. 49,438; provide appropriate compensation to affected travelers on overbooked flights, *e.g.*, 47 Fed. Reg. 52,985 (Nov. 24, 1982); 73 Fed. Reg. 21,026 (Apr. 18, 2008);

disclose scheduled plane-changes when selling tickets under a single flight number, 64 Fed. Reg. 12,854 (Mar. 15, 1999); not charge post-purchase ticket fees, 76 Fed. Reg. 23,110; and create and publish contingency plans ensuring that passengers have access to food, water, restrooms, or medical care during hours-long tarmac delays, 49 Fed. Reg. 40,567 (Oct. 17, 1984); 74 Fed. Reg. 68,983 (Dec. 30, 2009).

Congress has consistently ratified the Department's authority to prescribe practices under § 41712—including this Rule. In the FAA Reauthorization Act of 2024, which became law on May 16,[2] Congress addressed the Rule's provisions regarding offline ticket disclosures and, tellingly, did not question any other aspect of the Rule or the Department's authority to issue it. H.R. 3935, 118th Cong. tit. V, subtitle A, § 513(a) ("[T]he Secretary shall take such action as may be necessary to update the process by which an air carrier or ticket agent is required to fulfill disclosure obligations in ticketing transactions for air transportation not completed through a website."); *id.* § 513(b)(3) (endorsing regulations promulgated under § 41712); *see also*, *e.g.*, FAA Extension, Safety, and Security Act of 2016, Pub. L. No. 114-190, tit. II, subtitle C, § 2308, 130 Stat. 615, 648 (directing Department to update

---

[2] https://www.congress.gov/bill/118th-congress/house-bill/3935.

tarmac-delay regulation promulgated under § 41712, without questioning Department's regulatory authority).

Courts likewise recognize the Department's authority to prescribe regulations like the Rule. In *Spirit*, the D.C. Circuit upheld the 2011 rule requiring airlines to make the "total price" of airfare the "most prominent figure displayed on [the airline's] print advertisements and websites," to permit customers to cancel their reservations within "twenty-four hours following purchase," and to refrain from "increasing the price of air transportation and baggage fees after consumers purchase their tickets," 687 F.3d at 408. The court upheld that prescriptive rule as a proper "exercise of DOT's statutory authority to prevent 'unfair or deceptive practices,'" *id.* at 411 (alteration omitted), "plainly allowed under 49 U.S.C. § 41712," *id.* at 416, and consistent with the APA, *id.* at 417; *see Sabre*, 429 F.3d at 1124 (upholding regulation given § 41712's "broad delegation of authority").

**2.**    Petitioners and amicus incorrectly contend that the Department lacks power to "prescribe" and instead may only "prohibit" airline practices— or that it must address every conceivable alternative practice before setting a generally applicable standard. *E.g.*, Mot. 11–19.

That view defies the text, history, and precedent discussed above. "Section [41712] announces a policy against unfair or deceptive practices and

unfair methods of competition, and while at the same time it creates an adjudicative procedure for enforcing that policy, nothing in the Act indicates that it is the exclusive procedure." *United Air Lines, Inc. v. C.A.B.*, 766 F.2d 1107, 1111 (7th Cir. 1985); *see Spirit*, 687 F.3d at 411. In urging otherwise, petitioners draw an abstract distinction between affirmative prescriptions and negative prohibitions. But their interpretation would nullify §§ 40113, 41712, and 46301—and call into question a half-century of passenger protections. And virtually any affirmative command can be rephrased as a negative prohibition. *Cf. Murphy v. NCAA*, 584 U.S. 453, 475 (2018) (describing posited "distinction" between affirmative commands and negative prohibitions as "empty"). By vesting the Secretary with power to "prescrib[e] regulations" in "carry[ing] out" his § 41712 authority, 49 U.S.C. § 40113(a), and in imposing penalties for any "violation of" a "regulation prescribed ... under [§ 41712]," *id.* § 46301(a)(5)(D), Congress did not silently condemn consumers to suffer unfair and deceptive practices until they could be addressed in one-off adjudications or regulatory whack-a-mole.

Equally unpersuasive is petitioners' suggestion (Mot. 5–6, 12–13) that the Airline Deregulation Act (ADA), Pub. L. No. 95-504, 92 Stat. 1705 (1978), limited the Department's authority here. Carriers' choices of rates are currently free from regulation; their unfair and deceptive practices are not. *See*

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 379 (1992) (explaining that the ADA "retained" preexisting "enforcement authority regarding deceptive trade practices"). When Congress eliminated the Civil Aeronautics Board—the agency that regulated airline fares, routes, and service—Congress concluded that "there should continue to be authority in the Federal government to protect consumers against unfair and deceptive practices." H.R. Rep. No. 98-793, at 4 (1984). Indeed, Congress "was very concerned to preserve (in the Department of Transportation) authority to enforce [§ 41712]." *United*, 766 F.2d at 1112; *see Spirit*, 687 F.3d at 408.

It makes no sense to read the ADA as eliminating the ability to make rules regulating airlines' price and fee disclosures. After all, Congress directed the Secretary to "encourag[e], develop[], and maintain[] an air transportation system relying on actual and potential competition." 49 U.S.C. § 40101(a)(12). Accurate and transparent pricing information "'performs an indispensable role in the allocation of resources'" and is essential to competition. *Morales*, 504 U.S. at 388. To our knowledge, "no court has ever" adopted petitioners' startling view. *United*, 766 F.2d at 1111.

11

**B.    The Rule satisfies the APA's procedural requirements.**

Petitioners' procedural challenges lack merit. In contesting the agency's conclusions, petitioners raise policy disputes. In asserting they lacked meaningful opportunities to comment, petitioners are mistaken.

**1.    The Rule is reasonable and amply supported.**

The Rule properly targets "unfair" and "deceptive" practices. 49 U.S.C. § 41712. An "unfair" practice "causes or is likely to cause substantial injury, which is not reasonably avoidable, and the harm is not outweighed by benefits to consumers or competition." 14 C.F.R. § 399.79(b)(1). A "deceptive" practice is one "likely to mislead a consumer, acting reasonably under the circumstances, with respect to a material matter"—*i.e.*, a matter "likely to have affected the consumer's conduct or decision with respect to a product or service." *Id.* § 399.79(b)(2). The Rule specifies why carriers' current practices meet these definitions, citing yearly overpayments worth $543 million and years of complaints, submissions, and findings from commenters, consumers, consumer advocacy groups, States' attorneys general, and the GAO. *See, e.g.*, 89 Fed. Reg. 34,622–34,624, 34,633, 34,640–34,646; 87 Fed. Reg. 63,719–63,721.

**a.**    To begin, petitioners misclassify their objection to the Department's conclusions as implicating statutory "authority." Mot. 14. Petitioners

do not dispute the applicable legal definitions, *id.*, or challenge their duty to disclose the fees and policies covered by the Rule, Mot. 18 ("[C]arriers, in compliance with federal law, already disclose the information that the Rule covers."). Instead, they resist the Department's predictive judgment and application of settled legal rules to the comments and evidence in the record, which triggers arbitrary-and-capricious review. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 422–23 (2021); *Spirit*, 687 F.3d at 411, 417; *cf.* 49 U.S.C. § 46110(c). The Department need only have "reasonably considered the relevant issues and reasonably explained [its] decision." *Prometheus*, 592 U.S. at 423; *see Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 302 (1976) ("No findings that the practice was intentionally deceptive or fraudulent or that it in fact has caused injury to an individual are necessary."); *United*, 766 F.2d at 1113 ("The basic issue" regarding "the tendency of a marketing practice to deceive a significant number of consumers[] ... has traditionally been treated as judgmental rather than evidentiary." (citation omitted)).

A review of the Rule reveals that the Department's actions were reasonable and supported by a robust record.

***Baggage fees and policies.*** The Department properly determined that carriers commit an unfair and deceptive practice when quoting airfare

in response to a consumer's itinerary search without providing accompanying information on applicable fees for carry-on, first-checked, and second-checked bags, and when they fail to disclose applicable weight-and-dimension information before ticket purchase on an online platform. 89 Fed. Reg. 34,627.

Citing consumer complaints and GAO findings, the Rule details how airlines' existing practices unfairly "prevent[] consumers from knowing the true cost of their tickets" and could "cause consumers to invest time pursuing a ticket purchase based on an appealing airfare that ends up resulting in less favorable overall costs ... when baggage fees are added." 89 Fed. Reg. 34,627; *id.* 34,623–34,624; 87 Fed. Reg. 63,719–63,721. These practices cause substantial injury by imposing additional search time to find the total cost of travel and any additional expenditures that might have been avoided had the consumer been able to determine the true cost upfront. 89 Fed. Reg. 34,627. Despite the disclosures mandated in existing regulations, these harms are not reasonably avoidable because airlines often disclose bag fees in an untailored, static format, or in confusing and complex charts that are not readily available. *Id.* Nor are such harms outweighed by benefits, because "consumer confusion" leads to higher prices and creates "less than optimal purchasing decisions," and "disclosure of passenger-specific or anonymous itinerary-

specific fees whenever fare and schedule information is provided would promote informed buyers, enhance competition, and lower prices." *Id.* 34,628.

For similar reasons, the Department reasonably concluded that it is an unfair and deceptive practice not to disclose applicable "weight and dimension information" for first-checked, second-checked, and carry-on bags "before ticket purchase on an online platform." 89 Fed. Reg. 34,627. Those omissions, for example, likely cause substantial injury because customers "may decide to select a different carrier" if an airline's policy is "stricter than the common bag size." *Id.* 34,628. Such injuries are not reasonably avoidable because carriers disclose this information after ticket purchase, so consumers cannot "fully evaluate potentially better options." *Id.* Again citing longstanding complaints and comments, the Rule explains that carriers' current practices provide no countervailing benefit to consumers or competition because this "lack of information" hampers consumers' "ability to evaluate ticket purchases." *Id.*; *see id.* 34,650–34,652; 87 Fed. Reg. 63,721–63,722.

The Department likewise found that carriers' current baggage-related disclosures are deceptive because they "mislead[] consumers into believing the total purchase price" would be "cheaper than" it is. 89 Fed. Reg. 34,628. Because "carriers have different policies," and "because variation within each carrier depends on the fare category" or "status of the passenger," consumers

15

lack "sufficient notice" of actual costs and "are often diverted to complex charts that are confusing, prolong the consumer's process of evaluating itineraries and fares for purchase, and may ultimately not be instructive." *Id.* The Rule cites evidence that "[t]he cost of the first and second checked bag and carry-on bag is often material" because "knowing such costs in conjunction with the ticket price is likely to affect the consumer's purchase decisions," including "whether to check or carry-on a bag." *Id.* 34,628 & n.61.

***Change-or-cancellation information.*** The Department also appropriately found that carriers commit an unfair and deceptive practice when "disclos[ing] an airfare in response to a consumer's [online] itinerary search without providing accompanying information on applicable change and cancellation fees." 89 Fed. Reg. 34,629.

Like the rest of the Rule, this conclusion relies on substantial evidence. *See, e.g.*, 89 Fed. Reg. 36,623-36,625. Under preexisting regulations, carriers need only disclose change-or-cancellation fees "on or with the ticket." *Id.* 34,629. The agency found that practice unfair because travelers often receive this information *after* purchase, causing substantial injury because they would "select a fare without adequate notice" of "significant fees to change or cancel their tickets." *Id.* Such harms are not reasonably avoidable because existing regulations also allow carriers to obfuscate costs by disclosing fees

"in a range." *Id.* 34,629 & n.63 (citing petitioners' websites disclosing ranges from "'$0 to 1,000'" or "'up to $750'").

Making matters worse, "change and cancellation policies may not be simple to understand" because they may be impacted by things like "fare categories, passenger status, [and] ticket type." 89 Fed. Reg. 34,629. Because airlines do not presently provide cancellation-or-change-fee information "during the itinerary-search process," consumers must "interrupt their booking process to search for the information and extend the time needed to complete a booking." *Id.* Thus, the agency found, "disclosure of passenger-specific or non-passenger-specific change and cancellation fees during the itinerary-search process would promote informed buyers, enhance competition, and lower prices." *Id.*

The Rule also reasonably explains that existing practices regarding change-or-cancellation fees are deceptive. The agency reasoned that, "[w]ithout proper notice, consumers acting reasonably would be misled with respect to the change and cancellation fees and policies that apply to their ticket and may believe that changes or cancellations are possible at no fee or at a reduced fee." 89 Fed. Reg. 34,630. As the Rule describes, "many carriers" "publicly promoted" widespread elimination of such fees during the pandemic, *id.*, even though those changes were limited or later reinstated, *id.*

34,620, 34,631, 34,642. Citing comments from consumer advocates and individual travelers, the agency also determined that a "reasonable consumer may [incorrectly] believe that he or she can change a ticket free of charge," and that such fees and policies are material to purchasing decisions—including "which airline to select"—"particularly during emergency situations such as a pandemic or potential severe weather events such as hurricane seasons." *Id.* 34,630.[3]

***Seat-selection fees.*** The Department rationally determined that it is deceptive not to disclose that customers need not pay an advanced-seat-selection fee. Again addressing numerous comments, 89 Fed. Reg. 34,644–34,645, the agency reasoned that "[t]he lack of disclosure that consumers will be assigned a seat without additional payment is material as this omission is likely to result in consumers unnecessarily paying a fee for a seat," *id.* 34,645. To stop such confusion, the Rule requires airlines to make a short, uniform disclosure if they charge for seat selection.

---

[3] For similar reasons, the Department concluded that it is unfair and deceptive not to disclose change-or-cancellation policies. 89 Fed. Reg. 34,629–34,630, 34,650–34,652. But because the policies are "less critical at the time of itinerary search than the change and cancellation fees themselves," the Rule permits airlines to disclose those policies "before ticket purchase." *Id.* 34,630; *see id.* 34,628 (same for baggage weight-and-dimension disclosures).

18

**b.**    As noted, petitioners concede that "compliance with federal law" already requires *that* they disclose the fees and policies covered by the Rule. Mot. 18. Instead, they focus their challenge on *how* they must do so: Petitioners wish to include this information "on *other* pages," through "hyperlinks," or by using a slightly different "verbal formulation." Mot. 15–17.

The Department reasonably rejected those approaches. By requiring airlines to reveal relevant fees upfront, the Rule equips consumers with information necessary to make informed decisions, while also reducing the time needed to learn the full price of travel. Allowing carriers to keep their fees obscured does not make them less confusing or more efficient, *contra* Mot. 16–17; it makes them harder for consumers to avoid.

Petitioners' arguments also misunderstand the competitive injuries here. Restricting the flow of price and fee information is itself a consumer harm: It "disrupt[s] the proper functioning of the price-setting mechanism of the market," *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 461–62 (1986), and impairs consumers' "'ability to utilize and compare prices,'" *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692–93 (1978).

During the rulemaking, the Department considered the same positions petitioners repeat here—including their views on what consumers "know" and how they behave, and the need for passenger-specific search results.

19

*Compare* Mot. 2–3, 14–19, *with, e.g.*, 89 Fed. Reg. 34,634–34,635, 34,640–34,643, 34,646–34,655.[4] Nothing more is required. *See Prometheus*, 592 U.S. at 423; *accord Department of Commerce v. New York*, 588 U.S. 752, 777 (2019) (explaining that courts do not "second-guess[]" an agency's "weighing of risks and benefits" associated with rulemaking).

The agency reasonably credited the evidence provided by individuals, consumer organizations, various industry members, States' attorneys general, and the GAO over petitioners' self-serving views. Notably missing from petitioners' motion is any mention of Southwest Airlines, a member of petitioner A4A that declined to join this suit. Southwest acknowledged "that the number and complexity of fees by airlines made comparison shopping more difficult," and agreed "that it was appropriate for the Department to reduce the complexity of disclosures." 89 Fed. Reg. 34,633. As the administrative record reflects, although current regulations require airlines to disclose ancillary-fee information *somewhere* on their websites, that information remains difficult to ascertain at ticket purchase, as change and cancellation fees may appear in a range, and baggage fees often require charts or calculators to discern them. *See, e.g.*, *supra* pp. 13–18. Various commenters—

---

[4] *See also* https://perma.cc/4JXY-3XCR; https://perma.cc/557N-EEHS (representative consumer complaints).

ranging from consumers to Google—acknowledged the problem. *See* 87 Fed. Reg. 34,633. Similarly, advocates voiced enduring concerns that "consumers are unable to determine the true cost of air travel" before purchase, that consumers often find it "complicated and time-consuming" to uncover applicable bag fees, and that "a lack of passenger-specific information regarding [ancillary] fees" at purchase causes "market failure by limiting the ability of consumers to understand the true cost of the travel" or to "compare pricing." *Id.* 34,623; *see id.* 34,624–34,627, 34,633.

Petitioners' critique (Mot. 20–21) of the Department's cost-benefit analysis is misguided. In analyzing net effects, the agency considered (and adopted) the airlines' cost estimates. 89 Fed. Reg. 34,647–34,650. Petitioners, however, dramatically understate the Rule's benefits: The agency conservatively estimated $365.2–$484.3 million in annual time-savings benefits from searches conducted on airline websites, and $30.3–$253.5 million in annual net benefits. *Id.* 34,668–34,669. In doing so, the Department conducted a "[f]ormal uncertainty analysis" using standard economic tools. *Id.* 34,668; *see* 2024 RIA at 25–27.[5] The agency thus accounted for the "uncertain[ties]" that petitioners reference. Mot. 20–21. Similarly flawed is petitioners' criticism that the Department estimated that 46% of consumers

---

[5] https://perma.cc/TUA6-XL7F.

consider baggage fees when researching airfare. Although that figure involved university students and staff (not just students, *contra* Mot. 21), petitioners omit that they submitted data showing 44.3% of air travelers paid for checked bags in 2018, *see* 2024 RIA 16 & nn.36–37. The use of 46% versus 44.3% does not affect the cost-benefit conclusion.

Finally, petitioners erroneously assert (Mot. 21) that the agency "didn't account for" any "navigation costs" on consumers "who care about ancillary-service fees"—*i.e.*, the individuals most encumbered by current airline practices. The Department explained why they enjoyed substantial time-savings benefits. 89 Fed. Reg. 34,622, 34,668.

### 2. Petitioners' challenge to the agency's regulatory impact analysis is unfounded.

The Department provided ample opportunities for public input: It issued a notice of proposed rulemaking, extended the comment period, and held a public hearing. 89 Fed. Reg. 34,625.

Petitioners argue that the Department should have submitted its final regulatory impact analysis (RIA) for comment, on the ground that the final RIA differs from one issued with the notice of proposed rulemaking. Mot. 22. But the purpose of a final RIA is to analyze publicly available information and comments submitted during the rulemaking proceeding. Petitioners received "fair notice," *Texas Ass'n of Mfrs. v. U.S. Consumer Prod. Safety*

*Comm'n*, 989 F.3d 368, 381 (5th Cir. 2021), because they protest the use of publicly available data produced in comments, including petitioners' own submissions, *see* 2024 RIA 5–6. Petitioners' citations underscore that agencies may consider previously unpublished data "after the close of the comment period to address [an] alleged flaw" asserted in comments. *Chemical Mfrs. Ass'n v. EPA*, 870 F.2d 177, 201 (5th Cir. 1989) (citing *Community Nutrition Inst. v. Block*, 749 F.2d 50, 57–58 (D.C. Cir. 1984)). Any error, moreover, would be harmless. 5 U.S.C. § 706.

Regardless, petitioners' notice-and-comment arguments implicate only the Rule's provisions regarding "unfair" practices, Mot. 23, and cannot support staying the entire Rule. The provisions concerning "deceptive" practices do not require the net-benefit analysis to which petitioners object. 14 C.F.R. § 399.79(b)(2). Insofar as petitioners posit that RIAs are still "required by law," Mot. 23, that is true only because of an Executive Order designed to "improve" the government's "internal management," E.O. 12,866, § 10, 58 Fed. Reg. 51,735, 51,744 (Oct. 4, 1993). An alleged "failure to comply with it is not subject to judicial review." *Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1327 (11th Cir. 2021) (citing cases).

## II.   The Remaining Factors Tilt Sharply Against Granting a Stay.

Petitioners' stay request should also be rejected because they have not shown irreparable harm or that the equities favor a stay.

Petitioners claim (Mot. 23–25) that some carriers will incur compliance costs before the Rule's April 30, 2025, deadline. Those alleged expenses do not justify a stay, which is never "'a matter of right, even if irreparable injury might otherwise result.'" *Nken*, 556 U.S. at 433. Indeed, the Supreme Court has held that ordinary "litigation expense," even if "unrecoupable," "does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *see Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 115 (2d Cir. 2005). Petitioners also do not explain why certain airlines' alleged compliance costs are "'nonrecoverable,'" as would be required to show irreparable harm under this Court's precedent. *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022). Nor do they accurately describe the Rule's requirements: One declaration avers that the Rule mandates disclosing to ticket agents "competitively sensitive information" about customers, SA41, but that is incorrect, 89 Fed. Reg. 34,655–34,656.

By contrast, the harms to the government and public interest, which "merge" here, *Nken*, 556 U.S. at 435, weigh strongly against a stay. Several petitioners invoke financial costs, but by that logic, the public will suffer

irreparable injury if airlines' practices continue after the Rule's compliance deadline—particularly given the Rule's benefits. Congress also deemed it "in the public interest" to prevent unfair or deceptive practices in air transportation. 49 U.S.C. § 40101(a)(4), (9), (12). And despite petitioners' casual statement that the equities "collapse with the merits analysis" whenever someone seeks "to stay an agency rule," Mot. 25, the Supreme Court cautions against disregarding these factors, *Nken*, 556 U.S. at 436.

Even if certain petitioners were entitled to relief, a stay of the entire rule would be improper. Not all airlines have attempted to show harm, and no petitioner has standing to seek remedies for nonparties—including carriers that declined to join this action. *See FDA v. Alliance for Hippocratic Med.*, 2024 WL 2964140, at *3 (U.S. June 13, 2024). Notwithstanding this Court's contrary reasoning, the power to grant relief under the APA or 49 U.S.C. § 46110(c) does not alter these constitutional and equitable constraints. *See United States v. Texas*, 599 U.S. 670, 695–99 (2023) (Gorsuch, J., concurring in the judgment); *Starbucks Corp. v. McKinney*, 2024 WL 2964141, at *4 (U.S. June 13, 2024) (observing "strong presumption" that "traditional principles of equity" govern). At a minimum, petitioners cannot obtain a stay of portions of the Rule they have not challenged or for which

they have not shown likelihood of success on the merits. *See Starbucks*, 2024 WL 2964141, at *4–5.

## CONCLUSION

The Court should deny a stay.

Respectfully submitted,

*Of Counsel:*

SUBASH IYER
  *Acting General Counsel*

PAUL M. GEIER
  *Acting Assistant General Counsel*
  *for Litigation and Enforcement*

BLANE A. WORKIE
  *Assistant General Counsel for the*
  *Office of Aviation Consumer*
  *Protection*

PAULA LEE
  *Senior Trial Attorney*

EMILY KVESELIS
  *Trial Attorney*

  *U.S. Department of*
  *Transportation*

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

MICHAEL S. RAAB

 *s/ Nicholas S. Crown*
NICHOLAS S. CROWN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7325*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 616-5365*
  *nicholas.s.crown@usdoj.gov*

June 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

*s/ Nicholas S. Crown*
Nicholas S. Crown

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 5,194 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

 *s/ Nicholas S. Crown*
Nicholas S. Crown

**ADDENDUM**

# TABLE OF CONTENTS

49 U.S.C. § 40101.................................................................. A1

49 U.S.C. § 40113 ................................................................. A2

49 U.S.C. § 41712 ................................................................. A2

49 U.S.C. § 46106 ................................................................. A3

49 U.S.C. § 46107 ................................................................. A3

49 U.S.C. § 46110................................................................. A4

49 U.S.C. § 46301 .................................................................A5

FAA Reauthorization Act of 2024 ............................................. A6

**49 U.S.C. § 40101**

**§ 40101. Policy**

(a) Economic Regulation.—In carrying out subpart II of this part [*i.e.*, 49 U.S.C. §§ 41101–42304] and those provisions of subpart IV applicable in carrying out subpart II, the Secretary of Transportation shall consider the following matters, among others, as being in the public interest and consistent with public convenience and necessity:

...

(4) the availability of a variety of adequate, economic, efficient, and low-priced services without unreasonable discrimination or unfair or deceptive practices.

...

(9) preventing unfair, deceptive, predatory, or anticompetitive practices in air transportation.

(10) avoiding unreasonable industry concentration, excessive market domination, monopoly powers, and other conditions that would tend to allow at least one air carrier or foreign air carrier unreasonably to increase prices, reduce services, or exclude competition in air transportation.

...

(12) encouraging, developing, and maintaining an air transportation system relying on actual and potential competition—

(A) to provide efficiency, innovation, and low prices; and

(B) to decide on the variety and quality of, and determine prices for, air transportation services.

...

**49 U.S.C. § 40113**

**§ 40113. Administrative**

(a) General Authority.—

The Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by that Administrator or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by that Administrator) may take action the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate, considers necessary to carry out this part [*i.e.*, 49 U.S.C. §§ 40101–46507], including conducting investigations, prescribing regulations, standards, and procedures, and issuing orders.

**49 U.S.C. § 41712**

**§ 41712. Unfair and deceptive practices and unfair methods of competition**

On the initiative of the Secretary of Transportation or the complaint of an air carrier, foreign air carrier, air ambulance consumer (as defined by the Secretary of Transportation), or ticket agent, and if the Secretary considers it is in the public interest, the Secretary may investigate and decide whether an air carrier, foreign air carrier, or ticket agent has been or is engaged in an unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation. If the Secretary, after notice and an opportunity for a hearing, finds that an air carrier, foreign air carrier, or ticket agent is engaged in an unfair or deceptive practice or unfair method of competition, the Secretary shall order the air carrier, foreign air carrier, or ticket agent to stop the practice or method.

## 49 U.S.C. § 46106

### § 46106. Enforcement by the Department of Transportation

The Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) may bring a civil action against a person in a district court of the United States to enforce this part [*i.e.*, 49 U.S.C. §§ 40101–46507] or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part. The action may be brought in the judicial district in which the person does business or the violation occurred.

## 49 U.S.C. § 46107

### § 46107. Enforcement by the Attorney General

...

(b) Civil Actions To Enforce This Part [*i.e.*, 49 U.S.C. §§ 40101–46507].—

(1) On request of the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration), the Attorney General may bring a civil action in an appropriate court—

(A) to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part; and

(B) to prosecute a person violating this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part.

...

A3

(c) Participation of Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration.—

On request of the Attorney General, the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate, may participate in a civil action under this part.

## 49 U.S.C. § 46110

### § 46110. Judicial review

(a) Filing and Venue.—

Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (s) [1] of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

...

(c) Authority of Court.—

When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security

Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

...

## 49 U.S.C. § 46301

### § 46301. Civil penalties

(a) General Penalty.—

(1) A person is liable to the United States Government for a civil penalty of not more than $25,000 (or $1,100 if the person is an individual or small business concern) for violating—

(A) ... chapter 417 (except sections 41703, 41704, 41710, 41713, and 41714) ... of this title; [or]

(B) a regulation prescribed or order issued under any provision to which clause (A) of this paragraph applies;

...

(5) Penalties applicable to individuals and small business concerns.—

...

(D) Notwithstanding paragraph (1), the maximum civil penalty for a violation of section 41712 (including a regulation prescribed or order issued under such section) or any other regulation prescribed by the Secretary of Transportation by an individual or small business concern that is intended to afford consumer protection to commercial air transportation passengers shall be $2,500 for each violation.

**FAA Reauthorization Act of 2024, H.R. 3935, 118th Cong.**

**§ 513. Streamlining of offline ticket disclosures.**

(a) In General.—

Not later than 18 months after the date of enactment of this Act, the Secretary shall take such action as may be necessary to update the process by which an air carrier or ticket agent is required to fulfill disclosure obligations in ticketing transactions for air transportation not completed through a website.

(b) Requirements.—

The process updated under subsection (a) shall—

(1) include means of referral to the applicable air carrier website with respect to disclosures related to air carrier optional fees and policies;

(2) include a means of referral to the website of the Department of Transportation with respect to any other required disclosures to air transportation passengers;

(3) make no changes to air carrier or ticket agent obligations with respect to—

(A) section 41712(c) of title 49, United States Code; or

(B) subsections (a) and (b) of section 399.84 of title 14, Code of Federal Regulations (or any successor regulations); and

(4) require disclosures referred to in paragraphs (1) and (2) to be made in the manner existing prior to the date of enactment of this Act upon passenger request.

...

A6