No. 24-60231

In the

# United States Court of Appeals
## for the Fifth Circuit

AIRLINES FOR AMERICA, NATIONAL AIR CARRIER ASSOCIATION,
INTERNATIONAL AIR TRANSPORT ASSOCIATION, ALASKA AIRLINES, INC.,
AMERICAN AIRLINES, INC., DELTA AIR LINES, INC., HAWAIIAN AIRLINES, INC.,
JETBLUE AIRWAYS CORPORATION, AND UNITED AIRLINES, INC.,

*Petitioners,*

v.

DEPARTMENT OF TRANSPORTATION,

*Respondent.*

On Petition for Review of a Final Rule of the
United States Department of Transportation

## REPLY IN SUPPORT OF MOTION TO STAY
## PENDING JUDICIAL REVIEW

Alisha Q. Nanda
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116

Nicole Welindt
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Ave.
Palo Alto, CA 94301

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners Airlines for America (A4A), National Air Carrier
Association (NACA), and International Air Transport Association (IATA)*

*(additional counsel information on inside cover)*

*(additional counsel information continued from front cover)*

Paul W. Hughes
Andrew A. Lyons-Berg
Nicole E. Wittstein
MCDERMOTT WILL
  & EMERY LLP
500 North Capitol St. NW
Washington, DC 20001

*Counsel for Petitioners A4A, NACA, Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., JetBlue Airways Corporation, and United Airlines, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

**No. 24-60231**, *Airlines for America et al. v. Department of Transportation*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are so the judges of this Court may evaluate possible disqualification or recusal.

## I.    Petitioners

Petitioner Airlines for America has no parent corporation, and no corporation holds a 10% or greater ownership interest in it.

Petitioner National Air Carrier Association has no parent corporation, and no corporation holds a 10% or greater ownership interest in it.

Petitioner International Air Transport Association has no parent corporation, and no corporation holds a 10% or greater ownership interest in it.

Petitioner Alaska Airlines, Inc., is a wholly owned subsidiary of Alaska Air Group, Inc., a publicly held corporation. Blackrock, Inc., and The Vanguard Group each own 10% or more of Alaska Air Group, Inc.'s stock. No other publicly held corporation holds 10% or more of Alaska Airlines, Inc.'s or Alaska Air Group, Inc.'s stock.

Petitioner American Airlines, Inc., is a wholly owned subsidiary of American Airlines Group Inc., a publicly held corporation. No other publicly held corporation holds 10% or more of its stock.

Petitioner Delta Air Lines, Inc., is a publicly held corporation. It has no parent corporation, and no other publicly held corporation holds 10% or more of its stock.

Petitioner Hawaiian Airlines, Inc., is a wholly owned subsidiary of Hawaiian Holdings, Inc., a publicly held corporation. No other publicly held corporation holds 10% or more of its stock.

Petitioner JetBlue Airways Corporation is a publicly held corporation. It has no parent corporation, and Blackrock, Inc., and The Vanguard Group each own 10% or more of JetBlue Airways Corporation stock. No other publicly held corporation holds 10% or more of JetBlue Airways Corporation's stock.

Petitioner United Airlines, Inc., is a wholly owned subsidiary of United Airlines Holdings Inc. No other publicly held corporation holds 10% or more of United Airlines, Inc.'s stock.

## II.    Respondent

The United States Department of Transportation is an agency of the federal government.

## III.    Interested parties

### A.    Counsel for Petitioners

Counsel for Petitioners in the litigation are:

- Shay Dvoretzky, Alisha Nanda, Parker Rider-Longmaid, Kyser Blakely, and Nicole Welindt; Skadden, Arps, Slate, Meagher & Flom LLP, for Petitioners Airlines for America, National Air Carrier Association, and International Air Transport Association

- Paul W. Hughes, Andrew A. Lyons-Berg, and Nicole E. Wittstein; McDermott Will & Emery LLP, for Petitioners Airlines for America, National Air Carrier Association, Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., JetBlue Airways Corporation, and United Airlines, Inc.

### B.    Opposing counsel

Opposing counsel in the litigation are:

- Brian M. Boynton, Michael S. Raab, and Nicholas S. Crown, U.S. Department of Justice

- Subash Iyer, Paul M. Geier, Blane A. Workie, Paula Lee, and Emily Kveselis, U.S. Department of Transportation

### C.    Other interested parties

To counsel's knowledge, there are no additional firms or persons with an interest in the outcome of the litigation.

Dated: July 1, 2024                     */s/ Shay Dvoretzky*
                                        Shay Dvoretzky

                                        *Counsel for Petitioners*
                                        *A4A, NACA, & IATA*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

TABLE OF AUTHORITIES................................................................... vi

INTRODUCTION .................................................................................1

ARGUMENT.........................................................................................2

I.    The Airlines will likely succeed on the merits. ........................................2

      A.    The Rule exceeds DOT's authority. ..................................................2

            1.    DOT may only *prohibit* unfair or deceptive practices,
                  but it has *mandated* particular practices. ..............................2

            2.    The Rule unlawfully regulates practices that aren't
                  unfair or deceptive...................................................7

      B.    The Rule violates the APA. ..........................................................9

            1.    The Rule doesn't reflect reasoned decisionmaking. ...........9

            2.    DOT unlawfully relied on new data without
                  affording any opportunity for public comment................11

II.   The Rule will cause the Airlines irreparable harm................................12

III.  The balance of harms and the public interest support a stay. .............13

CONCLUSION ................................................................................14

CERTIFICATE OF COMPLIANCE ...................................................15

CERTIFICATE OF SERVICE ............................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brown v. Gardner,*
513 U.S. 115 (1994) ................................................................6

*Career Colleges & Schools of Texas v. United States Department of Education,*
98 F.4th 220 (5th Cir. 2024) ..........................................6, 13

*Carlson v. Postal Regulatory Commission,*
938 F.3d 337 (D.C. Cir. 2019) ..............................................9

*Chamber of Commerce of the United States v. United States Securities & Exchange Commission,*
85 F.4th 760 (5th Cir. 2023) ................................................10

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,*
467 U.S. 837 (1984) ...............................................................8

*D&G Holdings, L.L.C. v. Becerra,*
22 F.4th 470 (5th Cir. 2022) ..................................................5

*Garland v. Cargill,*
602 U.S. 406 (2024) ...............................................................8

*Loper Bright Enterprises v. Raimondo,*
No. 22-451, 2024 WL 3208360 (U.S. June 28, 2024) ..........8

*Louisiana v. Biden,*
55 F.4th 1017 (5th Cir. 2022) ..............................................13

*Murphy v. National Collegiate Athletic Ass'n,*
584 U.S. 453 (2018) ...............................................................5

*Nken v. Holder,*
556 U.S. 418 (2009) .............................................................13

*Ohio v. Environmental Protection Agency,*
No. 23A349, 2024 WL 3187768 (U.S. June 27, 2024) ......10

*Spirit Airlines, Inc. v. United States Department of Transportation,*
687 F.3d 403 (D.C. Cir. 2012) ...............................................4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Texas v. United States Environmental Protection Agency*,
   829 F.3d 405 (5th Cir. 2016) ........................................................ 2, 12, 13

*United Air Lines, Inc. v. C.A.B.*,
   766 F.2d 1107 (7th Cir. 1985) ...............................................................4

*United States v. Wells*,
   519 U.S. 482 (1997) ...............................................................................3

*VanDerStok v. Garland*,
   86 F.4th 179 (5th Cir. 2023) ......................................................... 5, 6, 8

STATUTES

Federal Aviation Act of 1958,
   Pub. L. No. 85-726, 72 Stat. 731 ..........................................................4

   Pub. L. No. 85-726, § 411, 72 Stat. at 769 ...........................................4

   Pub. L. No. 85-726, § 1002(b), 72 Stat. at 788-89 ...............................4

   Pub. L. No. 85-726, § 1002(d), 72 Stat. at 789 ................................3, 4

   Pub. L. No. 85-726, § 1002(f), 72 Stat. at 789-90 ................................3

Administrative Procedure Act,
   5 U.S.C. § 551 *et seq.* .................................................................. 1, 2, 13

Federal Trade Comission Act,
   15 U.S.C. § 41 *et seq.* ...........................................................................7

   15 U.S.C. § 45(n) ..................................................................................7

Airline Deregulation Act of 1978,
   49 U.S.C. § 1371 *et seq.* .......................................................................3

49 U.S.C. § 40113(a) .................................................................................5

49 U.S.C. § 41712 ............................................................................. 4, 5, 6

   49 U.S.C. § 41712(a) ..................................................................... 1, 2, 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Federal Aviation Administration Reauthorization Act of 2024,
  Pub. L. No. 118-63, § 503, 138 Stat. 1025, 1188-90,
  *codified at* 49 U.S.C. § 42305 ...........................................................6, 7

49 U.S.C. § 46301(a)(5)(D) .....................................................................5

**REGULATION AND FINAL AND PROPOSED RULES**

14 C.F.R. § 399.79(b)(2) ..........................................................................7

*Enhancing Transparency of Airline Ancillary Service Fees*,
  87 Fed. Reg. 63,718 (Oct. 20, 2022) ...................................................9

*Enhancing Transparency of Airline Ancillary Service Fees,*
  89 Fed. Reg. 34,620 (Apr. 30, 2024) ........................................ 1, 2, 3,
  ................................................................................. 5, 6, 7, 8, 9,
  .................................................................................. 10, 11, 12, 14

*Refunds and Other Consumer Protections*,
  89 Fed. Reg. 32,760 (Apr. 26, 2024) ...............................................6, 7

**OTHER AUTHORITIES**

Airlines for America, Comment Letter on Proposed Rule
  *Enhancing Transparency of Airline Ancillary Service Fees*
  (Jan. 23, 2023), https://tinyurl.com/3ac8hn48...........................................10

Regulatory Impact Analysis on Final Rule
  *Enhancing Transparency of Airline Ancillary Service Fees*
  (Apr. 23, 2024), https://tinyurl.com/2024-RIA ................................ 9, 10, 11

## INTRODUCTION

The Court should stay the Rule, *Enhancing Transparency of Airline Ancillary Service Fees,* 89 Fed. Reg. 34,620 (Apr. 30, 2024), because it exceeds the Department of Transportation's (DOT) authority under 49 U.S.C. § 41712(a) and violates the Administrative Procedure Act (APA), and because otherwise Petitioners (the Airlines) will incur significant, nonrecoverable costs.

*First*, the Airlines will likely succeed on the merits. DOT promulgated the Rule under § 41712(a), which authorizes it to "stop" "unfair or deceptive practice[s]." But the authority to "stop" some practices doesn't include the authority to prescribe the exclusive lawful practice. Yet the Rule does just that: it dictates when, where, and how airlines must disclose ancillary fees — sometimes even with DOT-scripted language — without establishing that *every other* disclosure method is unfair or deceptive.

DOT doesn't even acknowledge that § 41712(a) says "stop." Instead, DOT admits that the Rule is the latest extension of its 40-year "incremental approach" to rulemaking. Opp. 4. In other words, bit-by-bit, DOT has aggrandized its authority far beyond § 41712(a)'s limits.

The Rule also violates the APA. DOT conducted an unreasoned cost-benefit analysis and then justified the Rule with data the public never saw. DOT cannot plug the holes in its analysis, and it doesn't disagree that it never provided the public with the information it found key.

*Second*, without a stay the Airlines will suffer irreparable harm, spending *millions* in "nonrecoverable compliance costs," *Texas v. United States EPA*, 829 F.3d 405, 433 (5th Cir. 2016), to reengineer their websites. DOT's claim (Opp. 24) that those costs are litigation expenses ignores binding precedent.

The Court should stay the Rule.

## ARGUMENT

### I.    The Airlines will likely succeed on the merits.

#### A.    The Rule exceeds DOT's authority.

##### 1.    DOT may only *prohibit* unfair or deceptive practices, but it has *mandated* particular practices.

**a.**    DOT may order an airline "to stop" engaging in an "unfair or deceptive" practice. 49 U.S.C. § 41712(a). That authority doesn't include the power to prescribe an exclusive lawful practice. Mot. 11. But the Rule does just that by mandating when, where, and how airlines must disclose ancillary fees without establishing that DOT may "stop" *every other* possible disclosure method as "unfair or deceptive." Mot. 12-13.

Statutory history confirms that plain-text reading. Mot. 5-6, 12. Before the Airline Deregulation Act (ADA), the agency could either "prescribe … the lawful … practice" *or* "order" the carrier to "discontinue … [the] practice" if it found that the "practice affecting [a] rate, fare, or charge" was or would be "unjust or unreasonable, or unjustly discriminatory, or unduly preferential, or unduly prejudicial." Federal Aviation Act of 1958 (1958 Act), Pub. L. No. 85-726, § 1002(d), (f), 72 Stat. 731, 789-90. The ADA, however, left only the authority to stop such practices. "The most likely inference in these circumstances is that Congress deliberately" eliminated the prescriptive power. *United States v. Wells,* 519 U.S. 482, 493 (1997).

**b.** *i.* DOT has no direct response to statutory text or history. DOT *agrees* that the Rule imposes specific mandates—like disclosing ancillary fees at the "first" step of the search process, including detailed "information specific to the passenger," and displaying a "uniform disclosure" about seat-selection fees. Opp. 1-2, 18. But DOT ignores the statute's text, including the word "stop," which doesn't include the power to dictate the exclusive lawful practice.

DOT also glosses over Congress's withdrawal of the authority to "prescribe … the lawful … practice" when the agency found a given practice

unjust. 1958 Act, § 1002(d), 72 Stat. at 789. DOT suggests that the withdrawn authority concerned only direct regulation of "fares, routes, and service[s]." Opp. 11. That's incorrect. The withdrawn authority was the "power to prescribe rates *and practices* of air carriers," including "*any* … practice *affecting* such rate, fare, or charge." 1958 Act, § 1002(d), 72 Stat. at 789 (capitalization altered; emphases added). That authority came from Title X of the 1958 Act, which detailed the procedures for investigations involving "*any* question [that] may arise under *any* of the provisions of [the] Act," *id.* § 1002(b), 72 Stat. at 788-89 (emphases added), including "whether any air carrier … has been or is engaged in unfair or deceptive practices," *id.* § 411, 72 Stat. at 769.

*ii.*    DOT conflates (Opp. 10-11) the "stop means stop" argument with the "no rulemaking" argument, *see* Chamber Br. 3-11. Whether DOT has both rulemaking and adjudicatory authority is a different question from whether § 41712 authorizes it not only "to stop [a] practice" (what the statute says) but also to dictate lawful practices (authority Congress withdrew). While *United Air Lines, Inc. v. C.A.B.*, 766 F.2d 1107, 1111 (7th Cir. 1985), addressed the former issue, it said nothing about the latter. Neither did *Spirit Airlines, Inc. v. United States DOT*, 687 F.3d 403 (D.C. Cir. 2012).

DOT's reliance (Opp. 7, 10) on 49 U.S.C. §§ 40113(a) and 46301(a)(5)(D) fails, too. Neither provision suggests that DOT's rulemaking authority includes the power to dictate when, where, and how airlines must disclose ancillary fees, or otherwise expands the scope of § 41712.

DOT claims that "virtually any affirmative command can be rephrased as a negative prohibition." Opp. 10. But it never explains how the authority to "stop" gives it authority to issue detailed prescriptions. Its bare "*cf.*" citation to *Murphy v. NCAA*, 584 U.S. 453, 475 (2018), has nothing to do with agency authority. *Murphy*, an anticommandeering case, held that a distinction between commands and prohibitions was "empty" because "[t]he basic principle—that Congress cannot issue direct orders to state legislatures—applies in either event." *Id.* Here, in contrast, the basic principle is that an "agency literally has no power to act … unless and until Congress confers" that power. *D&G Holdings, L.L.C. v. Becerra*, 22 F.4th 470, 477 n.9 (5th Cir. 2022). And Congress didn't confer prescriptive power in § 41712.

***iii.*** DOT cites (Opp. 7-8) prior regulations issued under § 41712, perhaps to suggest that years of aggrandizement by "incremental" rulemaking authorize the Rule, Opp. 4. That's wrong. Only *Congress* can empower agencies. "Simply because [an agency] may have acted outside of its clear

statutory limits in the past does not mandate a decision in its favor today."
*VanDerStok v. Garland*, 86 F.4th 179, 190 (5th Cir. 2023). DOT's approach "is
irreconcilable with the judicial obligation to interpret the statute that Con-
gress actually enacted" and "would greenlight the aggregation of Executive
power 'through adverse possession by engaging in a consistent and unchal-
lenged practice over a long period of time.'" *Career Colleges & Schools of Texas
v. United States Department of Education*, 98 F.4th 220, 241 (5th Cir. 2024) (em-
phases omitted). Just so here. DOT's argument that the "Rule reflects an
incremental approach to addressing hidden fees" that has lasted 40 years,
Opp. 4, doesn't establish authority. It just admits a slow power grab.

DOT says Congress silently ratified its "authority to prescribe practices
under § 41712" by ordering DOT to address offline ticket disclosures
without "question[ing] any other aspect of the Rule." Opp. 8. But "congres-
sional silence" isn't ratification—silence "'lacks persuasive significance,'
particularly where administrative regulations are inconsistent with the con-
trolling statute," as here. *Brown v. Gardner*, 513 U.S. 115, 121 (1994).

Moreover, while Congress said nothing about the online disclosures
required by the Rule, it effectively codified a different regulation that DOT
issued shortly before issuing the Rule. *Compare Refunds and Other Consumer*

*Protections*, 89 Fed. Reg. 32,760, 32,832-32,836 (Apr. 26, 2024), *with* FAA Reauthorization Act of 2024, Pub. L. No. 118-63, § 503, 138 Stat. 1025, 1188-90, *codified at* 49 U.S.C. § 42305. This context suggests that Congress's failure to codify the Rule shows only that Congress didn't consider—or disagreed with—the Rule. Thus, if congressional silence is relevant, it *hurts* DOT.

### 2. The Rule unlawfully regulates practices that aren't unfair or deceptive.

**a.**    The Rule exceeds DOT's authority because it regulates practices that aren't "unfair" or "deceptive" under § 41712(a). Mot. 14-19. Congress modeled § 41712(a) on the Federal Trade Commission Act, which defines an "unfair" practice as one that "is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n). A "deceptive" practice, by comparison, "is likely to mislead a consumer, acting reasonably under the circumstances, with respect to a material matter." 14 C.F.R. § 399.79(b)(2).

The practices the Rule regulates aren't "unfair." Any harm from not having ancillary-fee disclosures on the *first* search page is reasonably avoidable; consumers can, and do, read those disclosures on *other* pages just

a click away. Moreover, any harm is outweighed by the benefits of clear, easily navigable search results. Mot. 15-17. The regulated practices also aren't "deceptive," because reasonable consumers know that ancillary services carry fees, that those fees vary, and that airlines' websites are the best places to find that information. Mot. 18-19.

    **b.**    DOT says this is an "arbitrary-and-capricious" argument, not a statutory-authority argument. Opp. 12-13. But courts regularly hold that "an agency has exceeded its statutory authority" where the challenged action doesn't fit "the plain language of the statute." *VanDerStok*, 86 F.4th at 188. Indeed, the Supreme Court just held that an agency "exceeded its statutory authority by issuing a Rule that classifies bump stocks as machineguns," because bump stocks don't satisfy the statutory criteria for machineguns. *Garland v. Cargill*, 602 U.S. 406, 415 (2024). The Airlines mount a similar challenge: The practices the Rule regulates don't satisfy the statutory criteria, because they aren't "unfair" or "deceptive." Resolving this statutory-interpretation issue is a task for this Court, especially because, with *Chevron* overruled, only courts have "the power to authoritatively interpret the statute." *Loper Bright Enterprises v. Raimondo*, No. 22-451, 2024 WL 3208360, at *17 (U.S. June 28, 2024).

Regardless, DOT's defense fails on its own terms, because DOT's conclusion that the regulated practices are "unfair" and "deceptive" is unreasoned, making the Rule arbitrary and capricious. *See* Mot. 14; *Carlson v. Postal Regulatory Commission*, 938 F.3d 337, 345, 351 (D.C. Cir. 2019). DOT cites consumer complaints about the *amount* of fees, *see* Opp. 20 n.4, but it hasn't shown that consumer *unawareness* of fees is a problem. In fact, DOT recognized that "many consumers may be aware of the existence of fees," 89 Fed. Reg. at 34,633, and that it "has not determined what share of complaints" related to consumers' being "unaware of the fees" rather than "not lik[ing] having to pay a fee," *Enhancing Transparency of Airline Ancillary Service Fees*, 87 Fed. Reg. 63,718, 63,721 n.19 (Oct. 20, 2022).

**B.    The Rule violates the APA.**

The Rule is unlawful because it is arbitrary and capricious and because DOT shirked its procedural obligations.

**1.    The Rule doesn't reflect reasoned decisionmaking.**

DOT inadequately analyzed and substantiated the Rule's costs and benefits, making the Rule arbitrary and capricious. Mot. 20-21. Even with DOT's unreasonable assumptions, discussed below, DOT put the odds that "net benefits" are "positive" at "roughly 53%"—a coin flip. 2024 Regulatory

Impact Analysis (2024 RIA), at i, https://tinyurl.com/2024-RIA. That's in-sufficient. *See Chamber of Commerce of the United States v. United States SEC*, 85 F.4th 760, 778 (5th Cir. 2023). DOT also failed to "consider[] the relevant fac-tors" in its analysis. *Id.* It rejected the Campbell-Hill survey, which accounted for 50% of 2019 U.S. roundtrip airline travelers, in favor of a sur-vey conducted at a single university, just because Campbell-Hill's data "appears to be low." 2024 RIA 16; *see* A4A Comments Attachment B 9-10. And DOT "needed to explain" why the Rule wouldn't slow *all* consumers down, *Ohio v. EPA*, No. 23A349, 2024 WL 3187768, at *8 & n.11 (U.S. June 27, 2024), including those who care about ancillary-service fees, 2024 RIA 19. Instead, DOT "sidestep[ped]" that critical piece of the analysis, *Ohio*, 2024 WL 3187768, at *8, arbitrarily inflating the Rule's benefits—and it sidesteps the issue now.

Indeed, DOT doesn't meaningfully respond to these failures. It doesn't explain why a university-specific survey trumps the Campbell-Hill data. *See* Opp. 21-22. It conclusorily states that it "explained why" consumers who care about ancillary fees "enjoyed substantial time-savings benefits," Opp. 22, while ignoring its failure to account for the *costs* to those consumers. And while DOT claims $543 million in "overpayments," Opp. 12, that figure

from the 2024 RIA is arbitrary, too: DOT admittedly lacks "any data to judge the accuracy of [the key] assumption" it made to arrive at that number, 2024 RIA 30.

### 2. DOT unlawfully relied on new data without affording any opportunity for public comment.

**a.** An agency violates its notice-and-comment obligations when it justifies a rule based on "new data" the public never saw. Mot. 22-23. Here, a core justification is that the benefits outweigh the costs. *See* 89 Fed. Reg. at 34,627. But DOT never published its supporting data until it issued the Rule. As DOT admitted, it originally "did not provide quantitative analysis of benefits and costs." 2024 RIA 5.

**b.** DOT doesn't dispute its nondisclosure. It instead misrepresents that the "data [was] produced in comments." Opp. 22-23. The 2024 RIA relies on "new research" from Nicholas Rupp, 2024 RIA 16, published *after* the comment period. *See id.*; 89 Fed. Reg. at 34,625. And the Airlines haven't found "Rupp" in the comments on the docket (https://www.regulations.gov/docket/DOT-OST-2022-0109/comments).

DOT also doesn't disagree that the cost-benefit analysis is "central" to the Rule. Mot. 22-23. It thus makes no difference whether failing to issue an

RIA is reviewable. *See* Opp. 23. The issue is DOT's reliance on secret data, Mot. 22-23—plus a secret $543 million figure unsupported by any data. Moreover, DOT's suggestion that a partial stay is warranted because some aspects of the Rule "do not require the net-benefit analysis," Opp. 23, fails. DOT doesn't even identify which provisions it's talking about. In any event, DOT's reliance on a cost-benefit analysis made that analysis "central," even if it wasn't required.

## II.    The Rule will cause the Airlines irreparable harm.

Without a stay, the Airlines will incur significant and nonrecoverable immediate and downstream costs. They must spend millions to reengineer their websites, diverting resources from other projects and thus potentially costing them millions more. And they will incur these costs immediately. The Airlines cannot postpone compliance, because the Rule's prescriptions take time to implement. Mot. 23-25.

DOT says those costs are just "litigation expense[s]," and that the Airlines haven't explained why "compliance costs are 'nonrecoverable.'" Opp. 24. *Texas* forecloses those nonsensical arguments: "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs," because those costs "cannot be recovered

'in the ordinary course of litigation.'" 829 F.3d at 433, 434 n.41. Just so here. "No mechanism here exists for the [Airlines] to recover the compliance costs they will incur if the … Rule is invalidated on the merits." *Id.* at 434.

## III.   The balance of harms and the public interest support a stay.

The balance-of-harms and public-interest factors, which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), likewise favor a stay. That's because there's "no public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

DOT downplays this point as a "casual statement." Opp. 25. Wrong—it's binding precedent. DOT also claims (Opp. 25) the stay should extend only to the Airlines. Wrong again—this Court's authority to stay rules under the APA "is not party-restricted." *Career Colleges*, 98 F.4th at 255. Lastly, DOT's plea (Opp. 25-26) for a partial stay fails; DOT doesn't even try identifying which provisions supposedly survive.

## CONCLUSION

The Court should stay the Rule pending review.

Dated: July 1, 2024

Respectfully submitted,

*/s/ Shay Dvoretzky*

Alisha Q. Nanda
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116

Nicole Welindt
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Ave.
Palo Alto, CA 94301

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Petitioners Airlines for America (A4A), National Air Carrier Association (NACA), and International Air Transport Association (IATA)*

Paul W. Hughes
Andrew A. Lyons-Berg
Nicole E. Wittstein
MCDERMOTT WILL
  & EMERY LLP
500 North Capitol St. NW
Washington, DC 20001

*Counsel for Petitioners A4A, NACA, Alaska Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Hawaiian Airlines, Inc., JetBlue Airways Corporation, and United Airlines, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 2,599 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: July 1, 2024               */s/ Shay Dvoretzky*
                                  Shay Dvoretzky

                                  *Counsel for Petitioners*
                                  *A4A, NACA, & IATA*

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I electronically filed this reply with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 1, 2024

*/s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Petitioners*
*A4A, NACA, & IATA*