No. 24-60231

## In the United States Court of Appeals for the Fifth Circuit

Airlines for America; Alaska Airlines, Incorporated; American Airlines, Incorporated; Delta Air Lines, Incorporated; Hawaiian Airlines, Incorporated; JetBlue Airways Corporation; United Airlines, Incorporated; National Air Carrier Association; International Air Transport Association,

*Petitioners*,

v.

Department of Transportation,

*Respondent.*

*consolidated with*

## No. 24-60373

Spirit Airlines, Incorporated,

*Petitioner*,

v.

United States Department of Transportation,

*Respondent.*

ON PETITION FOR REVIEW OF A FINAL RULE OF THE DEPARTMENT OF TRANSPORTATION

## BRIEF OF AMICI CURIAE CONSUMER FEDERATION OF AMERICA, AMERICAN ECONOMIC LIBERTIES PROJECT, NATIONAL CONSUMERS LEAGUE, & U.S. PUBLIC INTEREST RESEARCH GROUP IN SUPPORT OF RESPONDENT

MARK B. SAMBURG
  *Counsel of Record*
ROBIN F. THURSTON
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
msamburg@democracyforward.org

# CERTIFICATE OF INTERESTED PERSONS

No. 24-60231, *Airlines for America et al v. Department of Transportation*

consolidated with

No. 24-60373, *Spirit Airlines, Incorporated v. United States Department of Transportation*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Consumer Federation of America
The American Economic Liberties Project
National Consumers League
United States Public Interest Research Group
Democracy Forward Foundation
Mark B. Samburg
Robin F. Thurston

**Petitioners, Corporations with Ownership Interests in Petitioners, and Counsel**

Airlines for America
National Air Carrier Association
International Air Transport Association
Alaska Airlines, Inc.
American Airlines, Inc.
Delta Air Lines, Inc.
Hawaiian Airlines, Inc.
JetBlue Airways Corporation
United Airlines, Inc.
Spirit Airlines, Incorporated
Frontier Group Holdings, Incorporated
Alaska Air Group, Inc.

Blackrock, Inc.
The Vanguard Group
American Airlines Group, Inc.
Hawaiian Holdings, Inc.
United Airlines Holdings Inc.
Shay Dvoretzky
Alisha Nanda
Parker Rider-Longmaid
Kyser Blakely
Nicole Welindt
Paul W. Hughes
Andrew A. Lyons-Berg
Nicole E. Wittstein
Joanne W. Young
David M. Kirstein
Donald L. Crowell
Kirstein & Young PLLC
Skadden, Arps, Slate, Meagher & Flom LLP
McDermott, Will & Emery LLP

## Respondents and Counsel

Subash S. Iyer
Paul M. Geier
Blane A. Workie
Paula Lee
Emily Kveselis
Brian M. Boynton
Martin Vincent Totaro
Nicholas S. Crown
Michael S. Raab
United States Department of Transportation
United States Department of Justice

## Other *Amici* and Counsel

Airline Tariff Publishing Company
Chamber of Commerce of the United States of America

Jordan L. Von Bokern
Mariel A. Brookins
Tobias S. Loss-Eaton
Peter A. Bruland
Michael Tetreault
J. Parker Erkmann
Sidley Austin LLP
U.S. Chamber Litigation Center
Cooley LLP

Pursuant to Fed. R. App. P. 26.1, *amici* Consumer Federation of America, American Economic Liberties Project, and National Consumers League are nonprofit organizations.  Each *amicus* states that it has no parent corporation, and that no publicly held corporation holds an ownership interest of 10% or more in any *amicus*.

Dated: October 16, 2024               Respectfully submitted,

                                                        */s/ Mark B. Samburg*
                                                        Mark B. Samburg
                                                        Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES.......................................................................v

INTEREST OF AMICI CURIAE................................................................1

INTRODUCTION......................................................................................3

ARGUMENT .............................................................................................5

    I.   Airlines' dishonest pricing schemes undermine competition and rob consumers with no countervailing benefit to anyone except the airlines' bottom line..............................................................................5

CONCLUSION ........................................................................................16

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Other Authorities

American Airlines, *Bag and optional fees*,
https://www.aa.com/i18n/customer-service/support/optional-service-fees.jsp (last visited Oct. 15, 2024) ........................................................ 11

American Airlines, *Checked bag policy*, https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp (last visited Oct. 15, 2024) . 11

American Airlines, *Finnair*, https://www.aa.com/i18n/travel-info/partner-airlines/finnair.jsp (last visited Oct. 15, 2024) ............... 11

Brett Holzhauer, *Airline ticket prices are up 25%, outpacing inflation – here are the ways you can still save*, CNBC Select (Oct. 3, 2024), https://tinyurl.com/ticketpriceincrease ................................................. 15

Charlie Leocha, *New Survey Shows Consumers Mad As Hell About Hidden Airline Fees*, Traveler's United (Sep. 6, 2010), https://tinyurl.com/hiddenfeesurvey ................................................... 4, 8

Christopher Elliott, *Airline seat selection fees should be banned.  Until then, here's how to avoid them*, USA Today (June 2, 2023), https://tinyurl.com/seatselectionfee ....................................................... 7

Christopher Elliott, That's Ridiculous!  Carry-On Luggage Fees Are Just The Beginning, Frommer's https://tinyurl.com/thatsridiculousairline ............................................. 7

Council of Economic Advisers, *How Junk Fees Distort Competition*, The White House (Mar. 21, 2023), https://tinyurl.com/junkfeescompetition .................................................................................................... 12

Delta Air Lines, *Baggage & Travel Fees*, https://www.delta.com/us/en/baggage/overview (last visited Oct. 15, 2024) ................................................................................................ 10

Elizabeth Hilton, Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Oct. 12, 2022), https://tinyurl.com/dotcomment. ............................................................. 4

Emily Stewart, *How airlines squeeze you for every penny*, Vox (Oct. 20, 2022), https://tinyurl.com/frontierspiritfees .......................................... 7

Finnair, *Extra Baggage Fees*, https://www.finnair.com/us-en/baggage-on-finnair-flights/extra-baggage-fees (last visited Oct. 15, 2024) ....... 11

FlyersRights.org, Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Jan. 23, 2023), https://tinyurl.com/flyersrightscomment ......................................... 9, 14

Hans B. Christensen et al., *The Effects of Price Transparency Regulation on Prices in the Healthcare Industry*, tinyurl.com/effectpricetransparency ...................................................... 5

Lydia Saad, *U.S. Air Travel Remains Down as Employed Adults Fly Less*, Gallup (Jan. 6, 2022), https://tinyurl.com/galluppollairline ......... 7

Mount Airy Violins & Bows, LLC, Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Nov. 21, 2022), https://tinyurl.com/supportrulecomment ............................. 8

Organisation for Economic Co-Operation and Development, *Price Transparency Will a Greater Degree of Price Transparency Help or Harm Buyers?*, 5 OECD J. of Competition Law and Policy, 111 (2003) 5

Shelle Santana et al., *Consumer Reactions to Drip Pricing*, Marketing Science (Jan. 15, 2020), https://tinyurl.com/consumerreactions ......... 13

Southwest Airlines Co., Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Jan. 23, 2023), https://tinyurl.com/southwestcomment ............................................... 13

Steffen Huck et al., *Price Framing*, WZB Discussion Paper, No. SP II 2013-314 (Nov. 2013), https://tinyurl.com/priceframing ..................... 15

United Airlines, *Checked bag fee calculator*,
https://tinyurl.com/checkedbagcalculator (last visited Oct. 15, 2024)
(requiring flight information to obtain pricing information for checked
bags)......................................................................................................10

United Airlines, *Checked bag fee calculator*,
https://www.united.com/en/us/checked-bag-fee-calculator/any-flights
(last visited Oct. 15, 2024)..................................................................10

**Rules**

Enhancing Transparency of Airline Ancillary Service Fees Rule, 89 Fed.
Reg. 34620 (Apr. 30, 2024) .......................................... 3, 7, 9, 10, 14, 15

## INTEREST OF AMICI CURIAE[1]

*Amici* are non-profit, non-partisan organizations that advocate for the financial protection of the American public across the nation.

*Amicus* Consumer Federation of America ("CFA") is a national association of over 250 nonprofit organizations that advances the consumer interest through research, advocacy, education, and service. CFA has been a longtime champion for air travel passengers' rights, including advancing pro-consumer legislation with Congress and working with the Department of Transportation to secure meaningful consumer protections for passengers.

*Amicus* American Economic Liberties Project ("AELP") is an independent nonprofit research and advocacy organization dedicated to addressing the problem of concentrated economic power in the United States. It advocates for policies that address today's crisis of concentration through legislative efforts and public policy debates.

---

[1] All parties consented to the filing of this brief. No counsel for any party authored this brief in whole or in part. No party, party's counsel, or any person other than *amici*, their members, or their counsel contributed money intended to fund the preparation or submission of this brief.

AELP is nonprofit and nonpartisan and does not accept any funding from corporations.

*Amicus* National Consumers League ("NCL") is a nonprofit, nonpartisan consumer advocacy organization representing consumers and workers on marketplace and workplace issues since its founding in 1899. Headquartered in the District of Columbia, NCL provides government, businesses, and other organizations with the consumer's perspective on concerns including aviation, child labor, food safety, healthcare, privacy, and telecommunications.

*Amicus* United States Public Interest Research Group ("U.S. PIRG") is a nonprofit organization that advocates for the public interest, working to win concrete results on real problems that affect millions of lives, and standing up for the public against powerful interests when they push the other way. U.S. PIRG employes grassroots organizing and direct advocacy for the public on many different issues including preserving competition and protecting consumer welfare.

*Amici* understand that the people they serve face confusing and purposely deceptive processes when booking air travel. They write to

describe how airline booking deceptions harm American travelers and the competitive market for commercial air travel.  By requiring upfront disclosure of fees, the rule at issue here—the Department of Transportation's ("Department") final Enhancing Transparency of Airline Ancillary Service Fees Rule, 89 Fed. Reg. 34620 (Apr. 30, 2024) (to be codified at 14 CFR 259, 14 CFR 399) ("Rule") will put a stop to the airline industry's main trick for concealing the price of tickets, thereby fostering competition and saving individual travelers frustration, time, and money.

## INTRODUCTION

Petitioners[2] describe the Rule as "a solution in search of a problem,"[3] and Consolidated Petitioners further characterize that problem as "nonexistent."[4]  Reality is far different, and the problem is substantial: the commercial carrier industry—including Petitioners and Consolidated Petitioners—conceal the actual price of airfare from

---

[2] For ease of reference, *amici* refer to Airlines for America; Alaska Airlines, Inc.; American Airlines, Inc.; Delta Air Lines, Inc.; Hawaiian Airlines, Inc.; JetBlue Airways Corp.; United Airlines, Inc.; National Air Carrier Association; and International Air Transport Association as "Petitioners" and to Spirit Airlines, Inc. and Frontier Group Holdings, Inc. as "Consolidated Petitioners."
[3] Pet'rs Br. 2.
[4] Cons. Pet'rs Br. 2.

3

would-be customers in order to wring every possible dollar from passengers. And the Rule's solution is simple: as one commenter explained, "[t]he full price of the ticket should be clear to the buyer."[5] Nearly every respondent (99%) to a survey of airline travelers agreed: "airlines should be required to disclose all of their fees in advance on every web site that sells airline tickets."[6]

In the face of this basic requirement to inform potential customers of the actual price of their potential purchase, Petitioners and Consolidated Petitioners variously argue that purposely concealing cost information from would-be buyers is neither unfair[7] nor deceptive,[8] and that it was arbitrary and capricious for the Department to require price transparency.[9] Straining credulity even further, Petitioners and Consolidated Petitioners argue that it will be more difficult *for consumers* if airlines simply tell them how much a ticket will cost,[10] rather than requiring consumers to track down and add up multiple

---

[5] Elizabeth Hilton, Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Oct. 12, 2022), https://tinyurl.com/dotcomment.
[6] Charlie Leocha, *New Survey Shows Consumers Mad As Hell About Hidden Airline Fees*, Traveler's United (Sep. 6, 2010), https://tinyurl.com/hiddenfeesurvey.
[7] Pet'rs Br. 44-49.
[8] *Id.*, 49-53.
[9] *Id.*, 53-59; Cons. Pet'rs Br. 35-40.
[10] Pet'rs Br. 3, Cons. Pet'rs Br. 7.

pieces of the price to reach their own conclusion about what they will need to pay for a ticket.

These arguments are, at best, farcical. Concealing ancillary fee pricing behind dizzying booking systems unquestionably increases airline profits, but it does so at the cost of hurting consumers and undermining competition. The Rule addresses that problem head-on, and is well-reasoned with a strong basis in the administrative record.

## ARGUMENT

### I.    Airlines' dishonest pricing schemes undermine competition and rob consumers with no countervailing benefit to anyone except the airlines' bottom line.

Transparent pricing drives competition and benefits consumers by enabling price comparisons, ultimately lowering prices. Prevailing theories of economics[11] and empirical analysis of market behavior[12] tell us as much, as does common sense. If sellers offering a comparable product—for instance, a seat on a commercial flight from Washington,

---

[11] "As a general rule, increased price transparency will benefit buyers." Organisation for Economic Co-Operation and Development, *Price Transparency Will a Greater Degree of Price Transparency Help or Harm Buyers?*, 5 OECD J. of Competition Law and Policy, 111, 112 (2003).

[12] *See, e.g.,* Hans B. Christensen et al., *The Effects of Price Transparency Regulation on Prices in the Healthcare Industry*, tinyurl.com/effectpricetransparency.

D.C. to New Orleans—make clear the actual price of their product, would-be purchasers can make a rational decision in choosing among competitors. The lowest price may not always carry the day, as consumers may have additional preferences based on departure time, brand loyalty, or in-flight snacks, but informed consumers can consider all relevant factors and optimize their purchase. And because price will almost always be at least *a* factor in passenger booking decisions, price transparency incentivizes each carrier to lower their prices and increase their market draw.

At least that's how it's supposed to work. Instead, airlines— including Petitioners and Consolidated Petitioners—present disingenuously low prices for airfare. Once a would-be traveler is drawn in with a low base price, the airlines spring the trap through a practice called drip pricing, piling on ancillary fees for services like seat selection and the option to bring a bag, even a small carry-on, on vacation—things that an ordinary person would assume are included in the cost of travel.[13]

---

[13] Until recently, these services *were* included in the price of a ticket. Airlines first began charging extra fees for checked bags and seat selection in 2008, and the first charges for a carry-on began in 2010. Emily Stewart, *How airlines squeeze you for*

Indeed, to consider these fees in the course of comparison shopping, a consumer would need to know that their ticket, among other things, does not entitle them to bring anything with them when they travel.  But there is little reason to assume that most passengers know that basic components of air travel now come at a premium. Indeed, as the Department acknowledged in the Rule, "advocates also expressed the view that because most passengers travel once per year or less, they may not be aware of certain ancillary service fees."[14]  The average American took only 1.4 commercial airline trips in 2021.[15] Even among only those Americans who took at least one such trip, the average traveler took only 3.6 flights in 2021.[16]  Customers who are not regular fliers likely assume that airfare, like other commodities or services—groceries, bus fare, gasoline—costs what the seller says it

_every penny_, Vox (Oct. 20, 2022), https://tinyurl.com/frontierspiritfees (checked bag fee); Christopher Elliott, _Airline seat selection fees should be banned.  Until then, here's how to avoid them_, USA Today (June 2, 2023), https://tinyurl.com/seatselectionfee (seat selection fee); Christopher Elliott, _That's Ridiculous!  Carry-On Luggage Fees Are Just The Beginning_, Frommer's, https://tinyurl.com/thatsridiculousairline (last visited Oct. 16, 2024) (carry-on bag fees).
[14] Enhancing Transparency of Airline Ancillary Service Fees, 89 Fed. Reg. 34620, 34624 (April 30, 2024).
[15] Lydia Saad, _U.S. Air Travel Remains Down as Employed Adults Fly Less_, Gallup (Jan. 6, 2022), https://tinyurl.com/galluppollairline.
[16] _Id._

costs, rather than some different, higher, and hidden dollar amount. One commenter on the rule described purchasing two tickets that were listed at $359.86 and $359.87;[17] presumably, most consumers purchasing those tickets would expect to pay $719.73, since that's what the airline told her the tickets cost. Instead, as she put it, "[t]wo tickets at $359.86 cost $1374.55."[18] That reflects a 91% increase due to optional ancillary fees and non-optional fees and taxes that weren't included in the $359.86 listed price.[19] This commenter is not alone in her surprise: according to one survey of airline passengers, 65% of respondents said ancillary fees place "some or a great deal of unexpected financial strain" on their budget for travel, and 29% noted that they were "surprised [by these fees] often or nearly every time they travel."[20]

To make an informed selection among different commercial carriers, a consumer must build their custom fare with each airline for each flight option. And piecing together that information is time-

---

[17] Mount Airy Violins & Bows, LLC, Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Nov. 21, 2022), https://tinyurl.com/supportrulecomment.
[18] *Id.*
[19] *Id.*
[20] Leocha, *supra*, n. 6.

consuming and confusing: accessing information about baggage fees on

airline booking sites can require a consumer to make as many as

twenty-one additional clicks.[21]  Petitioners may be correct that seasoned

air travelers "know that ancillary services often cost money,"[22] but there

is no reason to assume that even those seasoned travelers know *how*

*much* money a given service would cost—they would still need to track

down that information and build their custom fare over and over again

for each potential flight from each potential carrier to be able to

comparison shop.  And finding and calculating those fees is no simple

task; as the Department noted, even among travelers who are aware of

ancillary fees, many "do not know the amount of the fees that will apply

to them, given the complexity of fee structures."[23]

　　A customer cannot find ancillary service fees for one airline and

simply compare base fares on the assumption that ancillary prices are

consistent across airlines.[24]  Commercial carriers do not use, for

---

[21] FlyersRights.org, Comment Letter On Proposed Enhancing Transparency of
Airline Ancillary Service Fees Rule (Jan. 23, 2023),
https://tinyurl.com/flyersrightscomment.

[22] Pet'rs Br. 2.

[23] 89 Fed. Reg. 34620, 34633.

[24] The information presented here about airline checked baggage fees is, to the best
of counsel's knowledge, accurate and reflective of the information published by the
airlines discussed.  To the extent there are errors in this description, they are

example, the same checked bag pricing as each other; or, in some instances, as themselves—as the Department explained in the Rule, "[a]irlines acknowledge that the fees for ancillary services often vary based on various factors such as the type of aircraft used, the flight on which a passenger is booked, or the time at which a passenger pays for the service or product."[25]  United Airlines requires flight information to even be able to see checked bag fees[26]—besides strongly implying that United does not use consistent checked baggage fees, this gatekeeping pressures consumers to commit time to exploring a United booking, reducing the likelihood that they will comparison shop elsewhere.  Delta Air Lines, on the other hand, lists their checked baggage fees, at least for "customers traveling on domestic flights within the U.S."[27]  A first checked bag on Delta costs $35 and a second costs $45.[28]  And American Airlines charges the same—but only sometimes.  For travel to Canada,

---

inadvertent and reflect the confusing information available to consumers regarding checked bag fees.

[25] 89 Fed. Reg. 34620, 34624.

[26] United Airlines, *Checked bag fee calculator*, https://www.united.com/en/us/checked-bag-fee-calculator/any-flights (last visited Oct. 15, 2024) (requiring flight information to obtain pricing information for checked bags).

[27] Delta Air Lines, *Baggage & Travel Fees*, https://www.delta.com/us/en/baggage/overview (last visited Oct. 15, 2024).

[28] *Id.*

Caribbean, Mexico, Central America, and Guyana, American's charges mirror Delta's.[29] And they're the same for travel between and with the U.S., Puerto Rico, and U.S. Virgin Islands, but only if the checked bag fee is paid online; otherwise the first checked bag will cost $40 instead.[30] Nor do these differences account for travel booked through one of these airlines, but operated by another airline. For example, a passenger may book "[t]ravel ticketed as an American Airlines marketed flight (booked as an AA flight number) and operated by Finnair,"[31] for travel to Europe. The baggage fees for such travel are unclear: American Airlines lists the cost for a first checked bag between the United States and Europe as $75, and the cost for a second as $100,[32] while Finnair charges either 65 or 70 Euros per bag for two checked bags between the United States and Europe—if a traveler pays in advance.[33] If the traveler pays at the airport, the first checked bag

---

[29] American Airlines, *Checked bag policy*, https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp (last visited Oct. 15, 2024).
[30] *Id.*
[31] American Airlines, *Finnair*, https://www.aa.com/i18n/travel-info/partner-airlines/finnair.jsp (last visited Oct. 15, 2024).
[32] American Airlines, *Bag and optional fees*, https://www.aa.com/i18n/customer-service/support/optional-service-fees.jsp (last visited Oct. 15, 2024).
[33] Finnair, *Extra Baggage Fees*, https://www.finnair.com/us-en/baggage-on-finnair-flights/extra-baggage-fees (last visited Oct. 15, 2024).

would still cost 60 Euros, but the second would cost 75 Euros.[34] "The

dizzying detail in the foregoing . . . has an important point:"[35] even if

consumers *can* determine price information themselves without clicking

all the way through to a final purchase screen, doing so is difficult and

unreliable at best.[36]

Consolidated Petitioners effectively admit that their practice of

hiding fees and the resulting information asymmetry prevents

consumers from making optimal purchasing decisions.[37] But

importantly, that's the whole point: the "use of drip pricing. . . makes it

more difficult for consumers to compare prices . . . , softening price

competition in the market."[38] Price competition, which drives prices

---

[34] *Id.*

[35] *Wages and White Lion Investments, L.L.C. v. FDA*, 90 F. 4th 357, 368 (5th Cir. 2024).

[36] As their chief concocted "benefit" to consumers of the drip pricing model, Petitioners and Consolidated Petitioners summarily conclude that the Rule will "overwhelm all travelers with mostly irrelevant information," Cons. Pet'rs Br. 7, on "a computer or smartphone screen so difficult to navigate that consumers will be unable to efficiently search for and book flights." Pet'rs Br. 3. Petitioners and Consolidated Petitioners provide no reason to assume that a pricing screen must be overwhelming to comply with the Rule, but even if they were correct, any confusion created by a crowded screen is certainly outweighed by eliminating the confusion caused by hidden and confusing pricing information.

[37] Cons. Pet'rs Br. 38 ("Nothing in the ADA is intended to guarantee that every consumer will make an 'optimal purchasing decision,' and Spirit and Frontier are unaware of any federal agency that has ever asserted such a basis for a regulation.").

[38] Council of Economic Advisers, *How Junk Fees Distort Competition*, The White House (Mar. 21, 2023), https://tinyurl.com/junkfeescompetition.

down as sellers compete to attract buyers, depends on buyers knowing the price of their options. But it is difficult enough for a consumer to know the price of any given airline ticket, and simply not feasible for consumers to comparison shop among airlines. And they don't. The commenter charged 91% above the quoted ticket price *could* have chosen to start the booking process over with another airline—including an airline with higher, but all-inclusive initial pricing to try to find a lower total fare,[39] but they stuck with the drip-priced fare. One experimental study found a similar pattern among subjects. Given two airlines from which to book airfare—one with drip pricing and the other with the fare displayed up front—a majority of participants who chose to build a fare through drip-pricing accepted the higher and deceptively represented fare without comparison shopping against the honestly priced and ultimately less expensive alternative.[40] And those participants declined to compare price despite the fact that the study included only one other competitor, meaning that they could have

---

[39] *See* Southwest Airlines Co., Comment Letter On Proposed Enhancing Transparency of Airline Ancillary Service Fees Rule (Jan. 23, 2023), https://tinyurl.com/southwestcomment ("Consumers booking on Southwest.com are informed of the total fare they will pay at the beginning of the search process.").
[40] Shelle Santana et al., *Consumer Reactions to Drip Pricing*, Marketing Science (Jan. 15, 2020), https://tinyurl.com/consumerreactions.

comparison shopped the entire available market far more easily than a consumer booking actual airfare.[41]  When asked why they didn't comparison shop the second option, participants indicated that "starting over would take too much time," and expressed skepticism that they wouldn't have been nickel-and-dimed by extra fees with the other option as well.[42]  These experimental findings are consistent with the Department's description of advocate comments arguing that drip pricing "tends to lock consumers into engaging with a given seller, and reduces competition, because the customer has invested time and energy into the purchasing process and thus is less likely to abandon the purchase entirely and re-institute a fuller search for options."[43]

Besides obscuring actual prices, ancillary fees themselves are big business: for instance, they constitute over 50% of revenue for Consolidated Petitioners Spirit and Frontier.[44]  In other words, those companies collect a majority of their revenue from charges that aren't presented to their customers up front.  Those fees, in turn, play a large role in ever-escalating travel costs.  Despite Petitioners' claims to the

---

[41] *Id.*

[42] *Id.*

[43] 89 Fed. Reg. 34620, 34624.

[44] FlyersRights.org, *supra* n. 21.

contrary,[45] flight prices are "skyrocketing,"[46] with fares increasing by

25% over the past year.[47]  This is, at least in part, an expected and

predictable consequence of drip pricing.  Research confirms: drip pricing

is the least efficient pricing model and the costliest one for consumers.[48]

According to one empirical study, drip pricing "wipes out 25% of

consumer surplus,"[49] even in an experimental context requiring only

two additional clicks to reach a final price—making comparison

shopping easier and faster than it actually is for airfare.  That

translates to real dollars saved by travelers: the Department has

determined that the Rule will save consumers $543 million annually in

"overpayment in fees."[50]  The airlines may have concocted a novel

economic theory that concealing price information from the marketplace

promotes efficiency,[51] but empirics show otherwise.

---

[45] Pet'rs Br. 1 (claiming airfares are at "'historically low' levels).

[46] Brett Holzhauer, *Airline ticket prices are up 25%, outpacing inflation – here are the ways you can still save*, CNBC Select (Oct. 3, 2024), https://tinyurl.com/ticketpriceincrease.

[47] *Id.*

[48] Steffen Huck et al., *Price Framing*, WZB Discussion Paper, No. SP II 2013-314 (Nov. 2013), https://tinyurl.com/priceframing.

[49] *Id.*  Consumer surplus refers to the difference between the price a consumer is willing to pay for a purchase and the price they actually pay.

[50] 89 Fed. Reg. 34620, 34668.

[51] *See, e.g.*, Cons. Pet'rs. Br. 2, "the traveling public . . . have most benefited from the innovation and low fares of a deregulated air transportation industry."

## CONCLUSION

Commercial carriers—including Petitioners and Consolidated Petitioners—reap vast pecuniary benefits from their predatory pricing schemes.  It stands to reason that they would seek to characterize this status quo as also benefitting consumers, but their arguments in this regard are baseless.  *Amici*, who represent and advocate for consumers, rather than padding their bottom lines by tricking them, know firsthand the detrimental impacts of the airline pricing model and the enormous potential benefits of the Rule for consumers and competition. The Rule recognizes these benefits and has developed a reasoned mechanism for achieving them.

**\*\*\***

This Court should conclude that the Rule is lawful.

Dated: October 16, 2024                    Respectfully submitted,

*/s/ Mark B. Samburg*
MARK B. SAMBURG
  *Counsel of Record*
ROBIN F. THURSTON
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
msamburg@democracyforward.org

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send notice to all registered counsel.

*/s/ Mark B. Samburg*
Mark B. Samburg

# CERTIFICATE OF COMPLIANCE

This filing complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 3,265 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This filing also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in 14-point Century Schoolbook font.

*/s/ Mark B. Samburg*
Mark B. Samburg

October 16, 2024